**Robert O. BALLARD, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 24A01–0306–CR–226.**

Court of Appeals of Indiana.

May 20, 2004.

Transfer Granted July 28, 2004.

Thomas M. Thompson, Smith & Thompson, Connersville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Robert O. Ballard (Ballard), appeals his conviction for voluntary manslaughter, a Class A felony, as a lesser included offense of Count I, murder, a felony, Ind.Code § 35–42–1–1.

We affirm, in part and reverse, in part.

### ISSUES

Ballard raises two issues on appeal, which we restate as follows:

1. Whether the State presented sufficient evidence to disprove Ballard's claim of self-defense; and

2. Whether the trial court abused its discretion in sentencing Ballard to an aggravated sentence of forty years, based on Ballard's criminal history which consists entirely of offenses unrelated to the present offense.

### FACTS AND PROCEDURAL HISTORY

On October 5, 2002, Ballard drove his daughter, B.S., back to her mother's house after she spent the night with him. When Ballard pulled up to Judy Smith's (Judy) home, Billy Smith Jr. (Billy), B.S.'s twenty-eight-year-old half-brother, also arrived at the house. Ballard told B.S. that he saw Billy give him "the middle finger" and that she should tell her mother what he had done. (Transcript p. 155). Ballard and Billy had a volatile relationship; in fact, Billy had fought with Ballard on several occasions. In 1997, one of these altercations resulted in Billy's conviction for battery on Ballard.

After dropping off his daughter, Ballard phoned Judy from a payphone at a local gas station. Ballard told Judy to "tell that son of a bitch son of yours not to flip—— not to give me the finger, and I'm going straight to Leann." (Tr. p. 344). Leann, Billy's ex-wife, and Billy were involved in an on-going child custody battle. When Judy confronted Billy with Ballard's allegation, he denied the incident ever happened. Billy checked the caller ID box on the telephone and left Judy's home.

Shortly thereafter, Billy arrived at Ballard's residence located at 3105 New Trenton Road, Franklin County, Indiana. Hearing fierce pounding on his front door, Ballard opened the door where he was confronted by Billy. After words were exchanged, Ballard closed the door and locked it. He went into his bedroom and retrieved his handgun from underneath his mattress. Holding the handgun in his left hand, he opened the front door again. Billy initially retreated, but then started walking towards the front door. Upon seeing Billy approach him, Ballard flinched and the gun went off, mortally wounding Billy.

Ballard immediately called 911 and informed the dispatcher that he had shot Billy and that he needed medical attention. Medical and police units were dispatched to Ballard's residence. At the same time, Ballard called Judy, stating "Judy, I shot your boy, come and get him, he's laying in the yard." (Tr. p. 351). Thereafter, Ballard placed several agitated 911 phone calls, urging a fast response from the medical unit. Sheriff Deputy Michael Johnson (Deputy Johnson) arrived at Ballard's

home approximately twenty minutes after the 911 dispatch. He found Billy laying face down on Ballard's driveway. Ballard, standing on his porch, informed Deputy Johnson that he was "the one that shot him" and that he "was going to take another ass beating." (Tr. pp. 134 & 135).

On October 8, 2002, the State filed an information, charging Ballard with murder, a felony, I.C. § 35–42–1–1. On November 1, 2002, Ballard notified the State of his intent to raise a claim of self-defense during trial by filing a Notice of Self-Defense and the Use of Force to Protect One's Person or Property. On March 17 through 18, 2003, a jury trial was held. At the conclusion of the jury trial, Ballard was convicted of voluntary manslaughter, a Class A felony, as the lesser included offense of murder. On May 23, 2003, the trial court conducted a sentencing hearing. At the close of the sentencing hearing, the trial court sentenced Ballard to a term of forty years, with ten years suspended. The trial court ordered Ballard to serve his sentence at the Indiana Department of Correction.

Ballard now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

■ Ballard initially challenges the sufficiency of the evidence, contending the State failed to rebut his claim of self-defense. Specifically, Ballard points to his prior history with Billy as support for his contention that he had no choice but to defend himself and his property.

■ We review a challenge to the sufficiency of the evidence to rebut a claim of self-defense using the same standard as for any claim of insufficient evidence. *Wilson v. State*, 770 N.E.2d 799, 801. Accordingly, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* If there is sufficient evidence of proba-

tive value to support the conclusion of the trier-of-fact, then the verdict will not be disturbed. *Id.* A valid claim of self-defense is a legal justification for an otherwise criminal act. I.C. § 35–41–3–2(a). To prevail on such a claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800. He is justified in using deadly force only if he "reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person." I.C. § 35–41–3–2(a). When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. *Wilson*, 770 N.E.2d at 800. The State may meet its burden by either rebutting the defense directly or relying on the sufficiency of evidence in its case-in-chief. *Butler v. State*, 547 N.E.2d 270, 271 (Ind.1989).

In support of his claim of self-defense, Ballard relies solely on his own testimony at trial. He testified that at the time of the offense he was sixty-three years old, in bad health, and had recently undergone knee replacement surgery. The record shows that after he heard the pounding on the door, Ballard opened the door. He stated that Billy's first words were "I'm going to beat you[r] fucking brains out and kill you, you son-of-bitch." (Tr. p. 412). He testified that at that moment he feared for his life. Although Ballard then slammed the door and locked it, Billy rammed up against the door three or four times and reiterated his threats. Hoping that Billy would leave by brandishing his handgun, Ballard informed the jury that he ran into the bedroom and retrieved the weapon. Holding the handgun in his left hand, Ballard opened up the door and

noticed Billy stepping back from the door. Ballard testified that he encouraged Billy to return home and that he refused to fight him. However, he stated that Billy approached the door again and when he had his foot against the door, Ballard fell backwards and the gun went off. Ballard added that he immediately dialed 911 and then called Judy, informing her that he accidentally shot her son.

Nevertheless, in order to rebut Ballard's self-defense claim, the State presented evidence, claiming that Ballard used excessive force. Physical evidence presented at trial indicates that Ballard fired one shot at Billy while he was standing in the doorway of his residence whereas Billy was standing across the porch, approximately 7 feet away. The record reveals that Sergeant Edward Lewis (Sergeant Lewis), a crime scene investigator, unsuccessfully searched the front door for any evidence of dents or kick marks. Testimony elicited from Ballard on cross-examination establishes that prior to retrieving the gun from his bedroom, Ballard had to bypass a telephone. Furthermore, Officer Deanna Hartwell (Officer Hartwell), the Trooper Investigator, testified that Ballard never told her that Billy had threatened him. Additionally, during testimony, Judy stated that Ballard called her claiming that he had shot her son, "come and get him, he's laying in the yard." (Tr. p. 351).

It is well settled that the amount of force used to protect oneself must be proportionate to the urgency of the situation. *Hollowell v. State,* 707 N.E.2d 1014, 1021 (Ind.Ct.App.1999). Where a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished. *Id.* Here, after closing and locking the front door, Ballard could have retreated into the safety of the residence and contacted the police department for further help. Instead

of calling the police department, he chose to retrieve his handgun in an attempt to encourage Billy to leave. During this altercation, Billy was shot. Therefore, based on the evidence presented, the jury could reasonably conclude that Ballard did not validly act in self-defense. *See id.*

Moreover, the sole evidence offered in support of his self-defense claim is Ballard's own testimony. The jury, after listening to all the evidence presented by both parties, observing the witnesses' demeanor, and judging their credibility, clearly rejected Ballard's recitation of the facts by returning a guilty verdict. Consequently, we find that there is sufficient evidence of probative value to support the conclusion of the trier-of-fact. *See Wilson,* 770 N.E.2d at 801. Accordingly, we decline to disturb the verdict. *See id.*

## II. *Sentencing*

Next, Ballard asserts that the trial court abused its discretion by imposing an enhanced sentence. Specifically, Ballard claims that the trial court erred by enhancing his sentence based on his prior criminal history, consisting merely of misdemeanor offenses which were all at least sixteen year old. We agree.

At the outset, we note that sentencing decisions are within the trial court's discretion, and will be reversed only upon a showing of abuse of discretion. *Powell v. State,* 751 N.E.2d 311, 314 (Ind. Ct.App.2001). The trial court's sentencing discretion includes the determination of whether to increase presumptive penalties. *Madden v. State,* 697 N.E.2d 964, 967 (Ind. Ct.App.1998), *trans. denied.* In doing so, the trial court determines which aggravating and mitigating circumstances to consider, and is solely responsible for determining the weight to accord each of these factors. *Perry v. State,* 751 N.E.2d 306, 309 (Ind.Ct.App.2001). The sentencing

statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is aggravating and mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Powell,* 751 N.E.2d at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed, if after due consideration of the trial court's decision, this court finds that the sentence was appropriate in light of the nature of the offense and the character of the offender. *See* App. R. 7(B); *Rodriguez v. State,* 785 N.E.2d 1169, 1174 (Ind. Ct.App.2003).

In the present case, Ballard was sentenced to a term of forty years, with ten years suspended for voluntary manslaughter, a Class A felony. The presumptive sentence for a Class A felony is thirty years, with not more than twenty years added for aggravating circumstances, and not more than ten years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–4. In support of its sentence, the trial court issued its Order on Sentencing, which stated in pertinent part that "[t]he [c]ourt finds there to be aggravating circumstances to warrant the enhancement from the base penalty to forty (40) years that being *[Ballard's] prior criminal record.*" (Appellant's App. p. 9) (emphasis added).

Furthermore, during the sentencing hearing, the trial court noted as follows:

Well, on page twelve of the pre-sentence investigation report are set out the aggravating circumstances identified by the [p]robation [d]epartment for the [c]ourt and also the mitigating circumstances and the recommendation. The aggravating circumstances identified from the [p]robation [d]epartment is that [Ballard] had a history of criminal or delinquent activity. The prior legal history that starts on page four and ends on page five by summation in paragraph D indicates that [Ballard] had been convicted of six misdemeanors and four of those are [o]perating while [i]ntoxicated and two for [d]riving [w]hile [s]uspended. In [s]ection C of [c]riminal [o]rientation the [p]robation [d]epartment notes that the first adjudication was at age thirty-six. There were no previous felonies. I think one of the misdemeanor convictions though had been a felony and was sentenced as an A misdemeanor some D.U.I offense. [Ballard] was never charged with battery or any violent offense, no juvenile record, no write ups in jail or in prison——oh, here it is. Felony reduced to misdemeanor at sentencing there was a yes, and I don't know it doesn't specify which——which one received that treatment except that the CRT456–86 in [s]ection B of the [p]re-sentence [i]nvestigation [r]eport under paragraph two, prior legal history, indicates a[d]riving under the [i]nfluence, second offense in Dearborn County. Convicted, sentenced under a Class A misdemeanor, so I assume that's the one shows up in paragraph C of the felony reduced——or sentenced as a misdemeanor. But in any event the aggravating circumstances with regard to the person having a history of criminal or delinquent activity is true, although detached and unrelated to this type of crime that we're talking about here by way of conviction. The person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility. Imposition of a reduced sentence or the suspension of a sentence, uh, imposition of probation would

depreciate the seriousness of the crime. That's cited by the [p]robation [d]epartment, although, I read somewhere——oh, the recommendation recommends fifteen years added for aggravating circumstances. The victim—the victims recommend aggravation of the sentence also, and we've heard from [ ] the relatives of the decedent, and their loss and their grief is clear and unambiguous as to the impact that the crime as had on their relationship and their family. The [p]robation [d]epartment cites for mitigation the relationship between [Ballard] and [Billy] was extenuating and again without going back into the facts brought out during the trial, clearly the relationship was less than amicable, and the [c]ourt notes that the crime that [Ballard] was convicted of did occur at his home on his front porch and that the presence of [Billy] was unsolicited by [Ballard]. And to some extent I guess that goes toward the [p]robation [d]epartment's finding of the relationship being extenuating. I can't find that there is no aggravating under the law of the State of Indiana and the [c]ourt had cited aggravating circumstances that have been identified by the [p]robation [d]epartment. I can't agree though that there's no mitigating circumstances, He does express today remorse. He does——meaning [Ballard], he does——he was under an order not to have any contact with the family prior so—and he asserted the defense of self-defense at trial. And although he could express remorse for the event, uh, obviously in those types of situations for tactical reasons [Ballard] may not of wished to go forward with making those kinds of feelings or remorse of public until such time as a jury had made its determination, and it has at this time. The history of [Ballard] [is] recited in the [p]re-[s]entence investigation report does indicate that these types of—this type of offense is unlikely to recur and for all of those reasons—I don't know what age has to do with it. I don't find that to be mitigating except to say that if you buy into the notion that [Ballard] was prodded into this act at the age of sixty-three. Certainly, he had dealt with stress in a way that didn't in the past elevate to this standard, but there's no evidence of that. I don't really know that age had anything to do with it, and I don't find it to be mitigating or aggravating, or that it plays a part. Uh, based on the balancing then that the [c]ourt has done with regard to the mitigation and the aggravation that has been expressed by both sides. The [c]ourt finds that [Ballard] should receive the base sentence of thirty years with the Indiana Department of Correction. To that time on balance of aggravation and mitigation there should be ten years added to that sentence suspended to probation with the condition that while on probation he have no contact with any member of [Billy's] family and while incarcerated he also have no contact with them either by phone or letter, or in anyway try to attempt contact with them.

(Sentencing Tr. pp. 25–30).

Thus, based on the combination of the trial court's Order of Sentencing and comments during the sentencing hearing, the trial court found as mitigating circumstances: (1) Ballard's expression of remorse; (2) his extenuating relationship with Billy; and (3) the offense is unlikely to recur. As aggravator, the trial court found: (1) Ballard's prior criminal history.

■ Ballard now argues that the trial court improperly characterized his prior criminal history as an aggravator. Our decisional law requires that the trial courts identify all "significant" aggravating circumstances. *See e.g., Widener v. State,* 659 N.E.2d 529 (Ind.1995); *Hammons v. State,* 493 N.E.2d 1250 (Ind.1986), *reh'g*

*denied.* Significance varies based on the gravity, nature, and number of the prior offenses as they relate to the current offense. *Wooley v. State,* 716 N.E.2d 919, 932 (Ind.1999), *reh'g denied.* For example, a criminal history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. *Id.* However, this criminal history does not command the same significance at a sentencing hearing for murder. *Id.; see also Westmoreland v. State,* 787 N.E.2d 1005, 1009 (Ind.Ct.App.2003) (where we held that a criminal history comprised of misdemeanors that are unrelated to the present offense are not significant aggravators in the context of a sentencing hearing for criminal deviate conduct).

In the present case, Ballard received a forty-year sentence for his conviction for voluntary manslaughter a Class A felony, with ten years suspended. The record clearly indicates that the sole aggravator, Ballard's prior criminal history, consists of two misdemeanor charges of driving while suspended and four misdemeanor charges of driving while intoxicated. The record also indicates that Ballard does not have a history of violent behavior and does not have a juvenile record. Furthermore, Ballard lived a predominantly law-abiding life: his first conviction occurred when he was thirty-six.

Although the trial court conceded that the convictions on Ballard's criminal history are detached and unrelated to the current offense, it nevertheless characterized his criminal history as a significant aggravator. Even though Ballard's trial counsel now argues that the most recent misdemeanor conviction was over sixteen years old, he failed to provide us with a copy of Ballard's criminal history.

Nonetheless, based on the trial court's comments and Order of Sentencing, we conclude that, in this case, a criminal history comprised of misdemeanors that are unrelated to the present offense are not significant aggravators in the context of a sentencing for voluntary manslaughter. *See Westmoreland,* 787 N.E.2d at 1009. Therefore, we determine that the trial court abused its discretion when sentencing Ballard. *See Powell,* 751 N.E.2d at 314. Here, the trial court improperly evaluated Ballard's aggravating circumstance to deviate from the presumptive and enhance his sentence to forty years. Thus, since this aggravator was improperly used, we are only left with the mitigators. Consequently, we find that the aggravated sentence imposed by the trial court was improper. Accordingly, we reduce Ballard's sentence to the presumptive sentence of thirty years. Because we reduce Ballard's enhanced sentence to the presumptive sentence we do not need to determine whether the sentence was appropriate in light of the nature of the offense and the character of the offender. *See Rodriguez v. State,* 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003).

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to disprove Ballard's claim of self-defense. We further hold that the trial court erred in sentencing Ballard to an aggravated sentence of forty years, based on Ballard's criminal history which is comprised entirely of offenses unrelated to the present offense. Therefore, we reduce Ballard's sentence to the presumptive sentence of thirty years.

Affirmed, in part and reversed, in part.

KIRSCH, C.J., and NAJAM, J., concur.