Sean STRONG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0401–CR–25.

Court of Appeals of Indiana.

Nov. 5, 2004.

Rehearing Granted Jan. 12, 2005.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Sean Strong ("Strong") appeals his sixty-year sentence

for murder.[1] We remand for a new sentencing order.

## Issue

Strong raises two issues, which we consolidate and restate as whether he was denied his Sixth Amendment right to have a jury determine, beyond a reasonable doubt, all facts legally essential to his sentence when the trial court found certain aggravating circumstances and sentenced him to an enhanced term of sixty years.

## Facts and Procedural History

On March 18, 2002, Strong asked his cousin, Dwayne Washington ("Washington"), if he knew anybody that wanted to purchase some jewelry. In response, Washington contacted Andreas Robertson ("Robertson"), a former classmate, to see if he would be interested in obtaining some jewelry. Later, Strong, his wife, Lisa Strong ("Lisa"), his brother-in-law, John Reese, and Washington drove to Robertson's apartment. The four arrived at the apartment, which Robertson shared with his fiancée, Shameka Webster ("Webster"), at approximately 8:00 p.m., but Robertson was not at home.

Later that evening, after Robertson had returned home, Strong and his three companions returned to the apartment. Robertson invited Strong, Lisa, and Washington into the apartment, while Webster remained in the bedroom with her child. Subsequently, Webster heard someone other than Robertson yell, "don't move." Tr. at 175. Immediately thereafter, Webster heard a series of gunshots and, in response, dialed 9–1–1. When Webster "peeked [her] head out of the hallway," she saw Washington crawling from the living room to the dining room, uttering that he had been shot, and

Strong standing in the kitchen. Webster closed her bedroom door and heard another round of gunshots. When Webster opened the door again, she saw Strong standing by the sink exclaiming that he had been shot, Robertson lying dead on the kitchen floor, and Lisa searching Robertson's pockets for money. Webster returned to her bedroom, telephoned her parents, and waited for the police to arrive.

When Marion County Sheriff's Deputy James McGunegill ("Deputy McGunegill"), who responded to the 9–1–1 dispatch, arrived at the apartment at approximately 11:43 p.m., he found Lisa, Strong, and Webster standing in the living room. Strong reported that Robertson had pulled a gun and shot Strong and Washington. Deputy McGunegill recovered a Ruger pistol from Strong's person and saw one handgun in Robertson's pocket and another lying on the ground in a pool of blood. Police officers also found Washington in a car, along with a fourth handgun, duct tape, a knife, and a ski mask. In addition, at the scene of the shooting, "[t]here were four firearms, eight fired bullets, eight fired cartridge cases, and then four fired jacketed bullets, jackets or lead fragments." *Id.* at 147.

An autopsy later revealed that Robertson had sustained six gunshot wounds, including one through his heart and two to his head. The gunshot wounds to Robertson's heart and head were fatal. The bullets that killed Robertson came from the Ruger pistol, which was recovered from Strong's person.

On May 21, 2002, the State charged Strong with felony murder, murder, conspiracy to commit robbery as a Class A felony,[2] and robbery as a Class A felony.[3]

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code §§ 35–41–5–2, 35–42–5–1.

3. Ind.Code § 35–42–5–1.

At trial, Strong argued that the shooting of Robertson was in self-defense. At the conclusion of trial, a jury found Strong guilty of murder and not guilty of felony murder, conspiracy to commit robbery, and robbery. The trial court entered a judgment of conviction on the offense of murder and sentenced Strong to sixty years in the Indiana Department of Correction for his murder conviction. In so doing, the trial court found two mitigating circumstances—(1) Strong's limited criminal history; and (2) that Strong does not have an adult felony conviction—and two aggravating circumstances—(1) that Robertson was shot in his home, i.e., a place where he had a right to be; and (2) that the fatal shooting was unprovoked. Concluding that the aggravating circumstances outweighed the mitigating circumstances, the trial court enhanced Strong's sentence from the presumptive term of fifty-five years to sixty years.[4] This appeal ensued.

### Discussion and Decision

On appeal, Strong argues, in pertinent part, that, by finding the two aggravating circumstances and imposing the enhanced sixty-year sentence, the trial court denied Strong his Sixth Amendment right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. To support this contention, Strong relies upon the United States Supreme Court's recent opinion of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *rehg denied.* In re-

sponse, the State asserts that Strong has waived any sentencing error with respect to *Blakely* because he failed to object at the sentencing hearing pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In the alternative, the State argues that the *Blakely* decision does not alter Indiana's sentencing procedure because it is a "hybrid indeterminate-determinate sentencing scheme" that does not suffer from the same flaws as the Washington sentencing procedure challenged in *Blakely.* We address each of the State's counter arguments separately.

### I. Waiver

■ First, the State maintains that Strong waived any argument that he was deprived of his Sixth Amendment right to have a jury determine all facts legally essential to his sentence when, at the sentencing hearing, he failed to object "that he had a right to a jury determination of the aggravating circumstances used to enhance his sentence," pursuant to *Apprendi*, 530 U.S. at 466, 120 S.Ct. 2348. Appellant's Br. at 10. We disagree.

In *Apprendi*, the statutory maximum penalty for a second-degree offense, i.e., the crime of which the defendant was convicted, was ten years and the presumptive sentence was seven years.[5] *Id.* at 468, 120 S.Ct. 2348; *see also* N.J.S.A. § 2C: 44–1(f)(1)(c) (providing that the presumptive

---

4. Indiana Code Section 35–50–2–3 provides, in relevant part: "A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances."

5. In *Apprendi*, the defendant—who was living in a previously all-white neighborhood—became upset when an African–American family moved into a neighboring house and, thus, fired several bullets into the family's new

home. 530 U.S. at 469, 120 S.Ct. 2348. As a result of his actions, the defendant was charged with a plethora of crimes, but pleaded guilty, in relevant part, to second-degree possession of a firearm for an unlawful purpose. *Id.* In addition, as part of the plea agreement, the State reserved the right to request the trial court to impose an "enhanced" sentence on grounds that the offense was committed as a hate crime. *Id.* at 470, 120 S.Ct. 2348.

sentence for a crime of the second degree is seven years). In addition, pursuant to the New Jersey sentencing procedure at issue, in determining the appropriate sentence to be imposed upon the defendant, the trial court was required to consider thirteen statutory aggravating circumstances—including the nature and circumstances of the offense, the risk that the defendant will commit another crime, the fact that a lesser sentence will depreciate the seriousness of the defendant's offense, and the extent of the defendant's prior criminal history—and thirteen statutory mitigating circumstances. *See* N.J.S.A. §§ 2C: 44–1(f)(1)(a) and (b). The trial court was then required to impose a presumptive term of seven years for a crime of the second degree, *unless* the preponderance of aggravating and mitigating factors—as determined by the trial court—weighed in favor of a higher or lower term, within the limits provided by the New Jersey sentencing law, i.e., a term of not more than ten years. *See* N.J.S.A. §§ 2C: 44–1(f)(1)(c).

In addition to this sentencing scheme, in *Apprendi*, an entirely separate statute, known as a "hate crime" law, provided for an "extended term" of imprisonment—above the ten-year maximum—when the trial court found that the defendant's purpose in committing the crime was to intimidate an individual or a group because of race, color, gender, handicap, religion, sexual orientation, or ethnicity. *Apprendi*, 530 U.S. at 468–69, 120 S.Ct. 2348. Because of this hate crime law, the defendant in *Apprendi*—who had fired several bullets into a neighboring home because of the race of its occupants—received a twelve-year sentence for the commission of a second-degree offense, when the statutory maximum penalty for such crime was ten years.

In reversing the defendant's twelve-year sentence, the *Apprendi* Court held that:

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.

*Id.* at 490, 120 S.Ct. 2348 (citing *generally Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)) (emphasis added). In so doing, the *Apprendi* Court explained:

We should be clear that nothing … suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.

530 U.S. at 481, 120 S.Ct. 2348 (emphasis in original).

Subsequently, in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the United States Supreme Court held that, pursuant to the Sixth Amendment, a sentencing judge, sitting without a jury, may not find an aggravating circumstance necessary for imposition of the death penalty. In so holding, the *Ring* Court noted:

The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years [which is *Apprendi*], but not the factfinding necessary to put him to death.

*Id.* at 609, 122 S.Ct. 2428. Because the defendant in *Apprendi* received a twelve-year sentence, which was five years above the presumptive and two years above the maximum, this notation in *Ring* illumi-

nates that the "statutory maximum," as used in *Apprendi,* was the prescribed statutory maximum of ten years and not the presumptive or standard sentence of seven years.

Indeed, in construing *Apprendi* in the context of the death penalty, the Indiana Supreme Court has held that *Apprendi* does not require that a jury find beyond a reasonable doubt every fact related to sentencing. *See Saylor v. State,* 765 N.E.2d 535, 564 (Ind.2002), *reversed on other grounds on reh'g,* 808 N.E.2d 646 (2004). Rather, it requires that only those facts that increase the penalty for a crime beyond the prescribed maximum be proved beyond a reasonable doubt. The *Saylor* court upheld Indiana's death penalty procedure because Indiana's sentencing statute for murder provides that the maximum sentence is death. *Id.*

However, in its recent decision of *Blakely,* the United States Supreme Court reaffirmed its holding in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt, or admitted by the defendant." *Id.* at 2536, 120 S.Ct. 2348 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). In so doing, the *Blakely* Court expressly defined the "statutory maximum," for purposes of *Apprendi,* as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* (emphasis in original). Put another way, "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional factors, but the maximum he may impose *without* any additional findings." *Id.* (em-

phasis in original). Accordingly, the *Blakely* Court held that aggravating factors that are used to increase a defendants sentence beyond a "statutory maximum" must be found by a jury, unless that right is waived or admitted by the parties. *Id.* at ——, at 2537.

■ Our examination of these precedents reveals that the "statutory maximum" as used by the United States Supreme Court in its 2000 *Apprendi* decision is different from that redefined in the 2004 *Blakely* decision. Indeed, in *Apprendi,* the statutory maximum was the ten-year prescribed statutory maximum, which a defendant could receive for a second-degree offense *if* the preponderance of certain aggravating and mitigating circumstances, as found by the trial court, weighed in favor of the higher term. By contrast, in *Blakely,* the "statutory maximum" is the maximum sentence that a trial judge may impose without any additional findings, i.e., the presumptive or standard sentence. Because *Blakely* redefined the "statutory maximum" for purposes of *Apprendi,* a defendant, such as Strong, who challenges his enhanced sentence but fails to do so on grounds of *Apprendi* has not waived his argument pursuant to *Blakely.* Accordingly, we find no waiver.[6]

■ Moreover, we note that Strongs failure to object to his enhanced sentence at the trial level, by itself, does not constitute waiver. Instead, the right to a trial by jury, which is a fundamental right guaranteed by the Sixth Amendment of the federal Constitution and by Article 1, Section 13 of the Indiana Constitution, is subject to a knowing, intelligent, and voluntary waiver. *Leone v. State,* 797 N.E.2d

---

**6.** The *Blakely* Court recognized that a defendant may waive his Sixth Amendment rights by pleading guilty as long as he or she "either stipulates to the relevant facts or consents to judicial factfinding." —— U.S. at ——, 124 S.Ct. at 2541. Strong did neither.

743, 752 (Ind.2003). A defendant's failure to object is not tantamount to such an affirmative act of waiver.

## II. Indiana's Sentencing Procedure in the Wake of Blakely

■ The State also asserts that the *Blakely* decision does not implicate Indiana's sentencing procedure. Again, we disagree. The present sentencing scheme in Indiana provides trial courts with the discretion "to fix the penalty of and sentence a person convicted of an offense," provided that such sentence is within a statutorily prescribed range of penalties for the corresponding offense. *See* Ind.Code 35–50–1–1. Each penalty range includes a presumptive or fixed sentence that the trial court may impose without any additional findings of aggravating or mitigating circumstances, as well as a minimum and maximum term, which the trial court may impose if, on balance, the existing mitigating and aggravating factors warrant such a reduced or enhanced sentence.

Indeed, Indiana Code Section 35–38–1–7.1, which governs the trial court's considerations for imposing sentences, provides a non-exhaustive enumeration of seven aggravating circumstances, such as the risk that the defendant will commit another crime, the nature and circumstances of the crime committed, and the defendant's criminal history, which the trial court must consider during sentencing, as well as a non-exhaustive list of factors that the trial court may consider as mitigating circumstances or as favoring suspending the sentence and imposing probation. *See* §§ a and c. This sentencing statute also delineates fourteen factors that a trial court may consider as aggravating in favor of

imposing consecutive terms of imprisonment, including a defendant's criminal history and whether he or she recently violated the conditions of any probation, parole, or pardon. However, if a trial court imposes an enhanced or consecutive sentence, as opposed to the presumptive sentence, it must: (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Veal v. State*, 784 N.E.2d 490, 494 (Ind.2003).

Indiana's sentencing statute for murder, for example, provides, in relevant part, that: "A person who commits murder shall be imprisoned for a fixed term of fifty-five (55) years, with not more than ten (10) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances." *See* Ind. Code § 35–50–2–3. Thus, the prescribed or "statutory maximum" sentence for murder, which the trial court may impose without any additional findings is fifty-five years and the penalty range for murder, notwithstanding a term of death, is between forty-five and sixty-five years.

As a result of this sentencing scheme, Strong received a sentence of sixty years within a penalty range of forty-five to sixty-five years. In imposing the enhanced sentence, the trial court found two mitigating circumstances, i.e., Strong's limited criminal history and the fact that he does not have an adult felony conviction, and two aggravating circumstances, i.e., that Robertson was shot in his home and that the fatal shooting was unprovoked. However, the jury did not find these aggravating circumstances,[7] beyond a reasonable

---

7. We observe that one may infer from the jury's guilty verdict that it rejected Strong's

claim of self-defense. However, this rejection alone does not equate to a jury finding, be-

doubt, and, thus, the jury's verdict alone did not allow for this enhanced punishment.[8] Rather, the jury verdict only found Strong guilty of murder. Accordingly, Strong's sixty-year sentence, which is five years above the presumptive, is invalid because it violates his Sixth Amendment right under *Blakely*. Indeed, inasmuch as Indiana present sentencing procedure allows a trial court, without the aid of a jury, to enhance a sentence where certain factors are present, it violates a defendants Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence, pursuant to *Blakely*.[9]

Further, because the trial court found Strongs limited criminal history and his lack of adult felony convictions to be mitigating circumstances and found no valid aggravating circumstances, we remand this cause for a new sentencing order. We believe that, inasmuch as *Blakely* allows a court to utilize the criminal history in sentencing determinations without the intervention of an independent factfinder, the criminal history or lack thereof as a mitigating factor may also be considered by the trial court without an independent finding. Moreover, we do not discern from the *Blakely* decision that the trial courts sentencing authority of balancing and weighing mitigating and aggravating circumstances has been usurped. However, in this case, because no aggravators

---

yond a reasonable doubt, that the shooting at issue was unprovoked. Indeed, at trial, the trial court instructed the jury as follows:

> The defense of self-defense is defined by law as follows:
>
> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that the force is necessary to prevent serious bodily injury to himself. No person in this State shall be placed in legal jeopardy of any kind for protecting himself or his family by reasonable means necessary.
>
> A person is not justified in using force if, he provokes unlawful action by another person with intent to cause bodily injury to the other person; or he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.
>
> Not with standing, ... a person is not justified in using force if he is committing, or is escaping after the commission of a crime. The State has the burden of disproving the defense beyond a reasonable doubt.

Appellant's App. at 122–23. Based upon this instruction, the jury could have determined that Strong was not justified in using deadly force because (1) such force was not necessary to prevent serious bodily injury to Strong; (2) Strong provoked the unlawful action; or (2) Strong entered into combat with Robertson or was the initial aggressor.

8. The *Blakely* Court expressly exempts a trial court's consideration of a defendant's criminal history from the Sixth Amendment requirement that a jury determine all facts legally essential to the defendant's sentence. —— U.S. at ——, 124 S.Ct. at 2536. Accordingly, the trial court's determination that Strong's limited criminal history and lack of adult felony convictions constitute mitigating circumstances does not require a jury determination.

9. Indiana's sentencing procedure remains valid, however, with respect to a defendant who has a prior criminal history as an aggravating circumstance pursuant to *Blakely*. Indeed, even under *Blakely*, had the trial court found Strong's criminal history to be an aggravating circumstance, as opposed to a mitigating circumstance, the sentence would not be in violation of the Sixth Amendment or *Blakely*. We further note that Indiana's sentencing scheme is unlike the indeterminate one challenged in *Williams v. New York*, 337 U.S. 241, 242–43, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), *reh'g denied*, which allowed the trial court to sentence a defendant to death regardless of whether it found additional facts outside of the trial record.

were found by an independent factfinder and the trial court found the criminal history to be a mitigating factor, we find it necessary to remand for a new sentencing order.[10]

For the foregoing reasons, we remand for a new sentencing order consistent with the dictates of *Blakely*.[11]

Remanded.

SHARPNACK, J., and MAY, J., concur.

---

**10.** Ironically, had the trial court imposed the presumptive term of fifty-five years, Strong's resultant sentence would pose no *Blakely* problem.

**11.** Because we hold that Strong's sentence is invalid under *Blakely*, we do not address his complaint that the enhanced sentence is erroneous because it was inappropriate in light of the nature of the offense and the character of the offender.