Scottie EDWARDS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 49A05–0401–CR–61.

Court of Appeals of Indiana.

Feb. 28, 2005.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Scottie Edwards, challenges the forty-year sentence imposed upon his conviction for Attempted Murder, a Class A felony.[1] Specifically, Edwards argues: (1) that in sentencing him to an enhanced sentence, the trial court relied upon facts not found by a jury in violation of his Sixth Amendment right under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and (2) that his sentence is inappropriate.

We reverse and remand.

On February 14, 2001, the State charged Edwards with attempted murder. After his first jury trial, Edwards was found guilty of attempted murder. Upon direct appeal, this court reversed Edwards's conviction and remanded for a new trial. *See Edwards v. State*, 773 N.E.2d 360 (Ind.Ct. App.2002), *trans. denied.* Following a second jury trial conducted December 15 through December 17, 2003, Edwards was again found guilty of attempted murder, a Class A felony. The trial court held a sentencing hearing on January 9, 2004. In its sentencing statement, the court identified three aggravating circumstances and no mitigating circumstances and then sentenced Edwards to an enhanced term of forty years imprisonment.[2] Specifically, the court found as follows:

"In determining what sentence to impose the Court will consider the evidence presented during trial in this matter that this Judge heard, the evidence presented during the sentencing hearing today, the contents of the pre-sentence report that was done in relation to the first trial of this matter, and the addendum that was prepared for this Court. This Court also considers the risk the Defendant will commit another crime,

1. Ind.Code § 35–41–5–1 (Burns Code Ed. Repl.2004); Ind.Code § 35–42–1–1 (Burns Code Ed. Repl.2004).

2. *See* Ind.Code § 35–50–2–4 (Burns Code Ed. Repl.2004) ("A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances . . . .").

the nature and circumstances of this crime, the defendant's prior criminal record, character and condition, the defendant's statement and the input of the victim through his brother, or the victim's family. The court finds three aggravating factors; one, the defendant has a prior history of criminal conduct. The court considers the matter contained in the pre-sentence report, it was reduced to a conviction. Also, the defendant is in need of correctional rehabilitation that can only be provided by a penal facility or the Department of Corrections. [sic] *Probably the most significant aggravating factor are the facts of this case and the degree of planning and preparation that the Defendant used to stalk the victim's residence on a number of occasions including surveillance with binoculars and such that were found in his vehicle. So the degree of preparation and planning for the attempt on Mr. Ford's life that eventually culminated on the date that this incident occurred.* No mitigating factors are found. In weighing the aggravating factors versus the mitigating factors the Defendant is sentenced to forty years at the Indiana Department of Corrections [sic]." Transcript at 560–61 (emphasis supplied).

■ Upon appeal, Edwards argues that imposition of an enhanced sentence runs afoul of the rule set forth in *Blakely, supra.* Before addressing the Blakely issue, we must first respond to two preliminary issues presented by the State. First, the State argues that Indiana's sentencing scheme is not implicated by the *Blakely* analysis. We disagree. As held by this court in *Berry v. State,* 819 N.E.2d 443,

455–56 (Ind.Ct.App.2004), we reject the State's assertion that the presumptive sentence functions merely as a sentencing guidepost for Indiana trial courts. The rule as stated in *Blakely* prohibits our courts from imposing a sentence greater than the presumptive if based upon a factor not admitted by the defendant or submitted to a jury and proven beyond a reasonable doubt.

■ The State also argues that Edwards has waived his right to challenge his sentence under *Blakely* because he failed to preserve the error with the trial court. We again disagree. Here, Edwards was sentenced on January 9, 2004 and timely filed his notice of appeal on January 28, 2004. On June 24, 2004, the *Blakely* opinion was handed down and shortly thereafter, on July 14, 2004, Edwards filed his Appellant's Brief presenting his *Blakely* argument. It is clear that newly announced constitutional rules must be applied to all cases still pending on direct review when the rule was announced. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Given that *Blakely* was decided after sentencing and after this appeal was initiated, this is Edwards's first opportunity to make a *Blakely* argument.[3] We will therefore address the merits of Edwards's *Blakely* claim.

On January 12, 2005, the United States Supreme Court decided *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In a two-part split opinion, one five to four majority reaffirmed the Court's holding in *Blakely.* In the second part of the decision, a different five

---

**3.** To the extent that a different panel of this court has held a *Blakely* claim waived by failure to make either a specific assertion under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) or a general Sixth Amendment claim, we respectfully disagree and decline to follow that decision. *See Mitchell v. State,* 821 N.E.2d 390 (Ind.Ct.App.2004).

to four majority struck down as unconstitutional certain mandatory provisions of the Federal Sentencing Guidelines. We believe that the key to an understanding of the *Booker* two-part opinion lies first with the fact that in Part I written by Justice Stevens, the Court clearly and unmistakably reaffirms the holdings of *Apprendi* and *Blakely*. Yet in Judge Barnes's dissent here an interpretation is placed upon *Booker* which virtually emasculates both *Apprendi* and *Blakely* and their clarion call to the sanctity of the right to a trial by jury as to "any fact that increases the penalty for a crime beyond the prescribed statutory maximum...." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2536.

■ Secondly, *Booker* must be understood with reference to what the Justices believed to be unconstitutionally "mandatory." One might say that because both the Federal Sentencing Guidelines and the Indiana statutory language require the sentencing court to consider certain factors, they are both "mandatory" in that sense. However, what was fatal to the provisions of the Guidelines stricken down in *Booker* was that the Guidelines mandated a sentence as set forth in the Guidelines themselves. As Judge Barnes's dissent here notes, under the Indiana sentencing scheme the trial court has discretion and is not required to impose a sentence exceeding the presumptive sentence whether or not aggravating circumstances are found. It is in this respect that we conclude that *Booker* does not impact Indiana's sentencing scheme.

In *Blakely*, the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), wherein the court stated, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be sub-

mitted to a jury and proved beyond a reasonable doubt.' " The *Blakely* Court, relying upon the *Apprendi* rule, held that the sentencing scheme at issue violated the petitioner's Sixth Amendment right to a trial by jury. —— U.S. at ——, 124 S.Ct. at 2543. The Court noted that precedent made clear that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 2537 (emphasis in original). The Court further clarified, stating that the relevant statutory maximum for *Apprendi* purposes "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.*

■ Edwards asserts that in convicting him of attempted murder, the jury was required to find only that he attacked his victim with the specific intent to kill. Edwards thus argues that the "degree of planning and preparation" was a fact not found by the jury and therefore, could not have been considered by the court as justification for imposing an enhanced sentence. We agree.

Here, although evidence tending to show planning and preparation was presented to the jury, the facts of planning and preparation need not have been found by the jury in order for the jury to have found Edwards guilty of attempted murder. Indeed, the evidence presented at trial showed that Edwards approached his victim and stabbed him approximately twelve times. His victim was treated for stab wounds to the back, arm, side, and back of the head and was also treated for a pierced lung. This evidence was sufficient from which the jury could have found that Edwards attacked his victim with intent to kill. Thus, the facts of planning and preparation are not necessarily "reflected in

the jury verdict."[4] Under *Blakely*, the trial court could not itself make the finding of "planning and preparation" and then rely upon such in sentencing Edwards to an enhanced term of imprisonment. Such is a violation of Edwards's Sixth Amendment right to trial by jury. *See Aguilar v. State*, 820 N.E.2d 762 (Ind.Ct.App.2005).

■ While it was error for the court to consider additional facts not inherent within the jury's verdict in sentencing Edwards, a sentence may still be upheld if there are other valid aggravating factors from which we can discern that the trial court would have imposed the same sentence. *See Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), *trans. denied; Powell v. State*, 751 N.E.2d 311, 317 (Ind.Ct.App.2001).

■ Here, we cannot say that reconsideration by the trial court without regard to the circumstances of the crime as an aggravating factor would result in the same outcome. In its sentencing statement, the trial court made clear that "[p]robably the most significant aggravating factor" was the circumstances of the offense—specifically referring to Edwards's planning and preparation. Further, as to the remaining aggravators, we

note that Edwards's criminal history consists of only one unrelated misdemeanor battery conviction in 1996 and thus of minimal significance.[5] With regard to the court's finding that Edwards was in need of correctional rehabilitation which can only be provided by a penal facility or the Department of Correction, we observe that such was merely a rote recitation of the statutory aggravating factor.[6] The trial court did not explain why the circumstance was aggravating and did not seem to afford it much weight. Given the foregoing, we must reverse Edwards's forty-year sentence and remand to the trial court with instructions to either convene a jury for sentencing purposes or impose the presumptive sentence of thirty years for Edwards's attempted murder conviction.[7]

The judgment of the trial court is reversed and the cause is remanded with instructions.

NAJAM, J., concurs.

BARNES, J., dissents with opinion.

BARNES, Judge, dissenting.

I respectfully dissent. The majority here concludes that *Blakely v. Washington* impacts Indiana's sentencing scheme and,

---

4.  Nor can it be said that Edwards admitted to such facts. While we observe that the presentence investigation report ("PSI") contains an "official version" of the offense and the events leading up to it (i.e. the evidence tending to support the court's finding of planning and preparation), inclusion of such does not constitute an admission by Edwards of the facts contained therein. Indeed, also included in the PSI is Edwards's version of events, which contradicts that found in the "official version." The "official version" in the PSI merely constitutes the probation officer's version of what happened.

5.  The significance afforded to a defendant's criminal history depends upon the gravity, nature, and number of the prior offenses as they relate to the current offense. *See Ballard*

v. State, 808 N.E.2d 729, 736 (Ind.Ct.App. 2004) (holding that criminal history comprised of misdemeanors unrelated to present offense not significant in context of sentencing for voluntary manslaughter), *trans. granted, summarily aff'd in relevant part by* 808 N.E.2d 729.

6.  We note that a perfunctory recitation of this aggravating factor is improper and thus cannot support imposition of an enhanced sentence. *See Holden*, 815 N.E.2d at 1060 n. 7; *Ingle v. State*, 766 N.E.2d 392, 396 (Ind.Ct. App.2002), *trans. denied.*

7.  Because we have reversed Edwards's sentence, we need not undertake a separate analysis of whether his sentence is inappropriate.

therefore, a jury rather than a judge must find any "fact" other than criminal history that warrants an increase in a defendant's sentence above the statutory presumptive. Indeed, in the months following the *Blakely* decision, every judge of this court who considered the issue, myself included, readily concluded that *Blakely* did impact Indiana's sentencing scheme. The broad language used in the *Blakely* majority opinion seemed to leave little choice. The opinion followed *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), which held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely* held "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." —— U.S. ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). Because Indiana trial judges are only permitted to impose a presumptive sentence following a judgment of conviction unless they specifically "find" aggravating circumstances, it was widely believed by members of this court that *Blakely* invalidated sentences where a judge enhanced a sentence based on aggravating circumstances, other than criminal history, that relied upon judicial "factfinding." *See Patrick v. State*, 819 N.E.2d 840 (Ind.Ct.App.2004); *Berry v. State*, 819 N.E.2d 443 (Ind.Ct.App.2004); *Ryle v. State*, 819 N.E.2d 119 (Ind.Ct.App.2004); *Milligan v. State*, 819 N.E.2d 115 (Ind.Ct.App.2004); *Williams v. State*, 818 N.E.2d 970 (Ind.Ct.App.2004); *Trusley v. State*, 818 N.E.2d 110 (Ind.Ct.App.2004); *Traylor v. State*, 817 N.E.2d 611 (Ind.Ct.App.

2004); *Teeters v. State*, 817 N.E.2d 275 (Ind.Ct.App.2004); *Strong v. State*, 817 N.E.2d 256 (Ind.Ct.App.2004); *Wickliff v. State*, 816 N.E.2d 1165 (Ind.Ct.App.2004); *Krebs v. State*, 816 N.E.2d 469 (Ind.Ct. App.2004); *Holden v. State*, 815 N.E.2d 1049 (Ind.Ct.App.2004).

Now, the Supreme Court has decided *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In my view, *Booker* requires a significant reconsideration of our earlier holdings regarding *Blakely's* impact in Indiana.[8] It contains an important clarification and limitation on *Blakely's* holding, agreed upon by all nine justices, that was not apparent in *Blakely* itself. Specifically, to quote Justice Stevens' majority opinion holding that the Federal Sentencing Guidelines were unconstitutional as written:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.... Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges.... *For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.*

N.E.2d 260, 269–74 (Ind.Ct.App. 2005).

---

**8.** I am in full agreement with Judge Robb's concurring opinion in *Abney v. State*, 822

—— U.S. ——, 125 S.Ct. at 750, 160 L.Ed.2d 621 (emphasis added). Justice Stevens also observed that there was "no distinction of constitutional significance" between the Federal Sentencing Guidelines and the Washington state sentencing guidelines struck down in *Blakely,* because "the relevant sentencing rules are *mandatory and impose binding requirements* on all sentencing judges." *Id.* at 749–50 (emphasis added).

Justice Breyer authored an opinion for a different majority, composed of the four *Blakely* dissenters and with the addition of Justice Ginsburg (who also joined Justice Stevens' opinion), holding that it was possible to render the Guidelines constitutional by severing the provisions that made them mandatory and calling for de novo appellate review of sentencing decisions. *Id.* at 764–65. Instead, the Guidelines are to be read as advisory only, with appellate review of sentencing decisions to be for "reasonableness." *Id.* Justice Breyer explicitly stated that 18 U.S.C. 3553(b), which made the Guidelines mandatory and binding on district court judges, "is a *necessary condition* of the constitutional violation. That is to say, without this provision ... *the statute falls outside the scope of Apprendi's requirement.*" *Id.* at 764 (emphases added).

The particular facts of *Booker* were that the defendant was charged with possession with intent to distribute at least 50 grams of crack cocaine, which by itself carries a sentencing range of 10 years to life. The jury specifically found that the defendant possessed 92.5 grams of crack. Under the Federal Sentencing Guidelines, this jury finding of the amount of the drug, combined with the defendant's criminal history, placed him in a mandatory sentencing range of 210 to 262 months. However, the district court found after a bench sentencing hearing that the defendant had pos-

sessed an additional 566 grams of crack, for a total of 658.5 grams. Under the Guidelines, this fact *required* the district court to impose a sentence of between 360 months and life imprisonment; the district court decided to impose the minimum possible 360–month sentence.

The Stevens majority held that this violated the defendant's Sixth Amendment right to a jury trial. *Id.* at 751. The "statutory maximum" sentence for *Blakely* purposes authorized by the jury's verdict and the defendant's criminal history was 262 months. *Id.* The Breyer majority concluded that the remedy for this constitutional violation was, generally, to make the Federal Sentencing Guidelines advisory only across the board and to subject district court sentencing decisions to appellate "reasonableness" review. *Id.* at 764–65. The Court held specifically that Booker was entitled to be resentenced, and have his sentence reviewed on appeal, in accordance with the Court's opinions. *Id.* at 769. Presumably, on remand Booker could be sentenced to a precisely identical 360–month sentence, above the 262 month "presumptive" maximum under the Federal Sentencing Guidelines based solely on the jury's verdict, so long as the district court was not *required* to impose that sentence and a reviewing appellate court found the sentence to be reasonable.

I conclude, pursuant to *Booker's* clarifications, that *Blakely* does not impact Indiana's sentencing scheme. Simply put, Indiana's sentencing scheme now somewhat resembles the Federal Sentencing Guidelines as reshaped by the Supreme Court, albeit that the Federal rules are much more explicit and precise as to what sentence ought to be imposed in response to particular facts. Indiana Code Section 35–38–1–7.1(a) applies to all non-death penalty/life without parole sentences and lists a number of factors trial courts "shall

consider" when determining an appropriate sentence; subsections (b) and (c) list a number of possible aggravating and mitigating factors trial courts "may consider"; subsection (d) allows courts to develop or recognize other aggravating or mitigating circumstances. Indiana Code Sections 35–50–2–3 through –7 provide sentencing ranges for murder and Class A, B, C, and D felonies, each with a presumptive starting point to which time may be added for aggravating circumstances or subtracted for mitigating circumstances. No part of these statutes prescribes that any particular aggravating circumstance *must* equal a certain increase in a defendant's sentence. In Indiana, the jury's verdict or a plea of guilty generally only authorizes the imposition of a presumptive sentence, which would be equivalent to the 210 to 262 months sentencing range in *Booker* authorized solely by the jury's verdict in that case. However, *Booker* makes it clear that it is acceptable for a sentencing court to rely on judge-found facts to increase a sentence above a presumptive sentence or sentencing range, so long as the court is not *required* to increase the sentence.

In this particular case, a jury found Edwards to have committed attempted murder, a Class A felony carrying a sentencing range of twenty to fifty years and a presumptive of thirty years. Ind.Code § 35–50–2–4. The trial court's selection of a sentence within that range was entirely a matter within its discretion, albeit we would have found a clear abuse of that discretion if it had imposed an enhanced sentence without finding or identifying any aggravating circumstances. On the other hand, if the jury had returned a verdict for attempted murder, but the State attempted to "prove" at a bench sentencing hearing that the victim actually died and Edwards intended that death, *Blakely* would apply if this were sufficient to expose Edwards to the increased penalty range for murder, which is forty-five to sixty-five years or, possibly, death or life imprisonment. I.C. § 35–50–2–3. Such a judicially-found fact would *mandate* an increase in Edwards' sentencing exposure and would violate *Blakely*.[9] The aggravating circumstances found by the trial judge in this case, however, did not require an automatic increase in Edwards' potential penalty either within or above the Class A felony range authorized by the jury's verdict.

In other words, while Indiana's sentencing scheme does not allow judges to increase a sentence above the presumptive unless they have found at least one aggravating circumstance, which seemed to run afoul of *Blakely*, neither does the scheme *mandate* judges to increase a sentence if they find aggravating circumstances, which makes the scheme constitutional under *Booker*. Under the Indiana sentencing scheme, judges have broad discretion to determine an appropriate sentence within a defined sentencing range, after considering the nature of the offense and character of the offender, with the caveat that they adequately explain an aggravated sentence above the statutory presumptive by identifying and weighing aggravating and mitigating (if any) circumstances. *Leone v. State,* 797 N.E.2d 743, 748 (Ind. 2003); Ind. Appellate Rule 7(B).[10] Judges

---

**9.** Habitual offender findings also require an automatic increase in a defendant's sentence equal, at a minimum, to the presumptive sentence for the underlying offense. I.C. § 35–50–2–8(h). Indiana by statute already requires jury trials for habitual offender determinations in cases where the underlying offense is tried to a jury. I.C. § 35–50–2–8(f). Additionally, the finding of habitual offender status is entirely dependent on a defendant's criminal history, seemingly placing it outside of *Apprendi* and *Blakely* in any event.

**10.** Similarly, Indiana's current "appropriateness" standard of review under Appellate

are not bound by statute to impose an enhanced sentence if aggravating circumstances exist. Any deviation by a judge above the statutory presumptive represents an exercise of his or her discretion. *See, e.g., Buchanan v. State,* 767 N.E.2d 967, 970 (Ind.2002). Thus, an Indiana judge's decision to enhance a defendant's sentence above the presumptive based upon an aggravating circumstance neither found by the jury nor admitted by the defendant does not run afoul of the Sixth Amendment because the judge also enjoyed the discretion *not* to enhance the sentence. I believe, under *Booker,* that this is enough to make Indiana's sentencing scheme fully constitutional.

As a practical matter, it is clear to me that the Supreme Court has, by the Breyer majority opinion, done its best to allow trial judges to use their collective discretion when sentencing criminal defendants. That discretion must be given, as much as it is constitutionally and statutorily possible, to Indiana trial judges. Because very few defendants come before the bar of justice with exactly the same background, criminal history or lack thereof, and various other attributes and flaws, and because no two crimes are precisely alike, I believe it is correct to read the *Booker* opinion to allow the present Indiana sentencing scheme to pass constitutional muster. *See State v. Barker,* 809 N.E.2d 312, 317 (Ind.2004) (stating, in case concerning application of *Apprendi* to Indiana's death penalty statute, that courts have "an over-

riding obligation to construe our statutes in such a way as to render them constitutional if reasonably possible.").

It also appears that Edwards' case is precisely the type of case Justice Breyer had in mind when he extolled the virtues of allowing trial judges discretion in determining an appropriate sentence as opposed to having juries determine any "facts" other than criminal history that may warrant an increased sentence. For example, Justice Breyer noted the vastly increased complexity that would result from regularly conducting jury sentencing "trials":

> How would courts and counsel work with an indictment and a jury trial that involved not just whether a defendant robbed a bank but also how? Would the indictment have to allege, in addition to the elements of robbery, whether the defendant possessed a firearm, whether he brandished or discharged it, whether he threatened death, whether he caused bodily injury, whether any such injury was ordinary, serious, permanent or life threatening, whether he abducted or physically restrained anyone, whether any victim was unusually vulnerable, how much money was taken, and whether he was an organizer, leader, manager, or supervisor in a robbery gang?

*Booker,* ——— U.S. at ——–———, 125 S.Ct. at 761–62. Justice Breyer also notes that a successful sentencing system depends "upon judicial efforts to determine, and to base punishment upon, the *real conduct*

---

Rule 7(B) would seem to resemble the "reasonableness" standard of review mandated by *Booker,* although arguably with slightly less deference to trial courts' sentencing decisions. Both standards serve the dual purpose of according deference to a trial judge's sentencing decision, while reserving to appellate courts the power to correct, to some degree and in an atmosphere removed from "local clamor," disparities in sentencing that may arise between sentences imposed in locales

that have differing political or social climates. *See Serino v. State,* 798 N.E.2d 852, 856–57 (Ind.2003). Our power to revise sentences under Appellate Rule 7(B) is also independent and different from the abuse of discretion standard employed in determining whether a trial court properly justified its decision to impose an enhanced sentence. *See Hildebrandt v. State,* 770 N.E.2d 355, 360 (Ind.Ct. App.2002), *trans. denied.*

that underlies the crime of conviction." *Id.* at 759 (emphasis in original). He also astutely observes that. an act that meets the statutory definition of a crime "can be committed in a host of different ways." *Id.* at 760.

Most of what Justice Breyer is describing in these passages is what would fall under the "nature and circumstances" of the crime under Indiana sentencing law, and which the trial judge here relied upon in enhancing Edwards' sentence.[11] Like Justice Breyer, I am concerned about the workability of a system where a jury, not a judge, must evaluate and find (or not find) a potential multitude of other facts relating to *how* a crime was committed before an appropriate sentence may be determined. As Justice Breyer makes clear, such a system is not only impractical, but also is not required by the Sixth Amendment, so long as the finding of a particular aggravator does not *mandate* an enhanced sentence.

Because the majority has decided to remand for resentencing on *Blakely* grounds, it did not address whether Edwards' sentence is inappropriate. I have no qualms with the appropriateness of the sentence, particularly in light of the evidence of extensive planning and stalking of the victim before the brutal knife attack. Such facts warrant an enhanced sentence in my opinion. In sum, I would affirm the sentencing decision of the trial court.

---

11. In other respects, Justice Breyer was describing varying degrees of robbery that are already accounted for under Indiana law. For example, "ordinary" robbery is a Class C felony; use of a deadly weapon or resulting bodily injury makes it a Class B felony; resulting serious bodily injury makes it a Class A felony. I.C. § 35–42–5–1. Under Indiana law, therefore, a jury already must find the existence of certain "aggravators" before robbery may be elevated from a C felony to a B or A felony and their increased sentencing ranges.