ANDRE LARUE COLLINS *v.* STATE OF INDIANA.

[No. 3-1273A176. Filed January 23, 1975. Rehearing denied February 27, 1975.]

*John Kappos*, of Merrillville, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert E. Dwyer*, Deputy Attorney General, for appellee.

GARRARD, J.—The defendant was convicted of forgery after a trial by the court. Our opinion treats only the argument urged by defendant that he was denied procedural due process of law and his right to counsel.

The record discloses that defendant Collins was not apprehended for nearly two years after the affidavit was filed and the warrant issued. He was released on bond. Later, when the court set the case for trial, the defendant did not appear and an alias warrant was issued.[1] On September 18, 1971, the alias warrant was executed and Collins, who was apparently unable to provide for the amount of his increased bond, was lodged in jail. Nothing further occurred for 146 days. Then on February 10, the court set the case for trial to commence March 3. On March 1, Collins was finally brought to court for arraignment and in-court advice regarding his con-

---

1. The record does not disclose whether or not actual notice of the trial setting was given to defendant or his bonding company.

stitutional rights. At this time it was determined that he was without funds and desired an attorney. A public defender was appointed to represent him. The next day, with trial already set to commence the following day, Collins' lawyer sought and was granted a continuance. Next, on May 8 Collins, *pro se,* filed a motion for discharge asserting both Indiana Rules of Procedure, Criminal Rule 4, and his rights under the Sixth Amendment. Hearing was set for May 18, but at the state's request, was continued. On May 25, the case was set for trial on June 14. On that date, with defendant having spent 269 days in jail, the court heard argument and denied the motion for discharge. It then proceeded to arraign and try the defendant.

## I.  SPEEDY TRIAL

Rule CR. 4(A) provides that a criminal defendant shall not be detained in jail without trial for more than six months, except where a continuance was had on his motion, or the delay was [otherwise] caused by his act, or where congestion of the court calendar does not permit trial within the prescribed period.

The trial court denied Collins' motion for discharge since the March 3 setting, which was within the six month period, was not adhered to due to the continuance secured by Collins' attorney.

The purpose of Rule CR. 4(A) as it applied to Collins has been stated to require a dismissal where the defendant has been incarcerated for more than six months without trial *through no fault of his own.*[2] *State ex rel. Dull* v. *Cir. Ct. of Delaware Co.* (1973), 261 Ind. 248, 301 N.E.2d 519; *State ex rel. Curry* v. *Davis* (1968), 251 Ind.

---

2. The rule has been since amended to provide release of the defendant on his own recognizance where he has been held for six months without trial. In addition, the 1974 amendment to CR. 4(F) extends the time within which a defendant may be brought to trial only by the amount of delay resulting from his acts. At the time of Collins' trial, delay chargeable to him caused the period to run anew. *Summerlin* v. *State* (1971), 256 Ind. 652, 271 N.E.2d 411.

504, 242 N.E.2d 512. See, also, *Johnson* v. *State* (1974), 262 Ind. 164, 313 N.E.2d 535.

Of course, ordinarily, the defendant may not divorce himself from the actions of his attorney in determining whether delay of the trial is properly chargeable to the defendant.

On the other hand, we have repeatedly held that a violation of a defendant's right to counsel occurs where counsel is appointed so shortly before the commencement of trial that there cannot have been time for effective preparation. *Powell* v. *Alabama* (1932), 287 U.S. 45; *Sweet* v. *State* (1954), 233 Ind. 160, 117 N.E.2d 745; *Bradley* v. *State* (1949), 227 Ind. 131, 84 N.E.2d 580; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N.E.2d 915; *Hartman* v. *State* (1973), 155 Ind. App. 199, 292 N.E.2d 293. Accordingly, had the defendant, rather than merely requesting a continuance, objected to proceeding to trial on March 3 on the grounds that his counsel had not been appointed sufficiently in advance to permit him to prepare, we would have little difficulty in finding that the continuance granted was not chargeable to defendant for purposes of CR. 4(A). See, *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307. To hold otherwise could invite frustration of CR. 4(A) through a court's double neglect in failing to provide prompt trials and prompt determination of a defendant's need of counsel.

However, it is also well established that CR. 4, while intended to implement speedy trial, is not itself a constitutional guarantee. *Bryant* v. *State* (1973), 261 Ind. 172, 301 N.E.2d 179; *Easton* v. *State, supra.* Its violation does not, then, present a question of fundamental error.

Therefore, since no objection was made to the trial court based upon the brevity of time to prepare, and the propriety of charging the defendant with the continuance granted on March 2 was not presented in the motion to correct errors or appellant's brief, such error is not available on this appeal. What, however, about Collins' right to speedy trial as guaran-

teed by the Sixth Amendment and Article 1, Sec. 12 of the Indiana Constitution?

In *Barker* v. *Wingo* (1972), 407 U.S. 514, the United States Supreme Court considered at length the considerations applicable to speedy trial which differentiate its consideration from the considerations involved in a defendant's other constitutional guarantees. The Court rejected, as improper, either a standard which would simply require trial within a specified time, or the demand-waiver standard, which would restrict consideration of the right to those cases where a demand for trial was made. The majority concluded that determination of whether the right to speedy trial has been afforded depends upon a "balancing test" to be made on an *ad hoc* basis in which the conduct of both the prosecution and the defendant are to be weighed. The Court then prescribed four guideposts for assessment in an individual case: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) prejudice occurring to the defendant.

We deem the standard announced in *Barker* equally applicable to Ind. Const. Art. 1, Sec. 12, as it provides the greatest balance between an accused's right to prompt disposition and the people's right to have meritorious cases prosecuted to conviction.[3]

In Collins' case the length of delay, nine months from execution of the alias warrant to trial, is not itself inordinate. While the reason for delay should in large part be assigned to the court's failure to appoint counsel until the very eve of scheduled trial, it must also be noted that upon granting the continuance of March 2, there still remained some two weeks within which trial might have been held and the six month period adhered to. The record discloses no effort to

---

3. Of significance in the latter regard is the mandate that an accused denied speedy trial must be discharged rather than merely retried and afforded proper constitutional safeguards. See, *Strunk* v. *United States* (1973), 412 U.S. 434, 93 S.Ct. 2260.

secure such a setting, and, in fact, another two months elapsed before the defendant made any objection.

In considering the prejudice occurring to the defendant, the Court in *Barker* noted three interests to be considered: (i) prevention of oppressive pretrial incarceration; (ii) minimizing anxiety and concern of the accused; and, most importantly, (iii) limitation of the possibility that the defense will be impaired. It does not appear from the record before us that Collins' defense was in any manner impaired through the delay.

The Court in *Barker* cautioned:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." 407 U.S. 533.

While, therefore, we are offended by the course of events that beset Collins, we are unable to conclude that they combined to deprive him specifically of the constitutional guarantee to speedy trial.

## II.  RIGHT TO COUNSEL

We next consider whether the course of events in Collins' case amount to a deprivation of his right to counsel.

At the outset it is well to note that the American Bar Association Standards Relating to Providing Defense Services (Recommended Standards, 1967), § 5.1 provide:

> "Counsel should be provided to the accused *as soon as feasible* after he is taken into custody, when he appears before a committing magistrate, or when he is formally charged, whichever occurs earliest. The authorities should have the responsibility to notify the defender or the official responsible for assigning counsel whenever a person is in custody and he requests counsel or he is without counsel." (Our emphasis)

We express our approval of this concept. However, it does not purport to define the constitutional limitations which attend the right to counsel.

In turning to those limitations we first note that in the present case we are not concerned with those instances where

an accused has affirmatively sought to exercise his right and has been denied. See, e.g. *Suter* v. *State* (1949), 227 Ind. 648, 88 N.E.2d 386. Usually such instances also contain Fifth Amendment ramifications. See, e.g. *Escobedo* v. *Illinois* (1964), 378 U.S. 478.

Instead we are concerned with those applications recognizing the necessity of affirmative state action.[4] The basic premise, long enunciated, is that an accused is entitled to the benefit of counsel at every critical stage of the proceedings. *Hamilton* v. *Alabama* (1961), 368 U.S. 52; *Powell* v. *Alabama* (1932), 287 U.S. 45. It is also settled that this includes arraignment. *Goff* v. *State* (1960), 240 Ind. 267, 163 N.E.2d 888.

However, definition of the prearraignment right to counsel is more elusive, owing in large part to the context in which deprivation of the right is asserted on appeal. Nevertheless, certain limitations appear.

In *United States* v. *Wade* (1967), 388 U.S. 218; and *Gilbert* v. *California* (1967), 388 U.S. 263, the Court found the right to counsel to exist at post-indictment pretrial lineups because of the critical effect of the identifications secured upon the trial.

However, in *Kirby* v. *Illinois* (1972), 406 U.S. 682, the Court refused to extend *Wade-Gilbert* to a lineup conducted after arrest but before the institution of formal charges. The plurality opinion concluded that Sixth Amendment rights presuppose the institution of adversary judicial criminal proceedings.[5] The *Kirby* rationale has been adopted in Indiana.

---

4. Our specific concern is the affirmative act of determining whether an accused desires counsel and is in need of appointed counsel. Many of the cases, however, arise in a context of determining whether the absence of counsel calls for the exclusion of particular evidence. Thus, for example, in *Ash* v. *United States, infra,* defendant had counsel but counsel was not present at the photographic display. Albeit this distinction, the governing principle is the same: the right to the assistance of an attorney at a particular "stage" of the proceedings. We deem an accused's rights under Art. § 13 coextensive with the federal right.

5. The recognized exception for right to counsel at pre-indictment police interrogations set forth in *Escobedo, supra,* and *Miranda* v. *Arizona* (1966), 384 U.S. 436, have been restricted to Fifth Amendment applications. *Kirby* v. *Illinois, supra; Johnson* v. *New Jersey* (1966), 384 U.S. 719.

*McPhearson* v. *State* (1970), 253 Ind. 254, 253 N.E.2d 226; *Lewis* v. *State* (1969), 252 Ind. 454, 250 N.E.2d 358; *Auer* v. *State* (1972), 154 Ind. App. 164, 289 N.E.2d 321; *Pack* v. *State* (1974), 162 Ind. App. 107, 317 N.E.2d 903.

In *United States* v. *Ash* (1973), 413 U.S. 300, 93 S. Ct. 2568, the Supreme Court returned to post-indictment proceedings, and rejected the assertion that a defendant's Sixth Amendment right was violated by failing to give his attorney the opportunity to be present at a photographic display conducted shortly before trial. After reviewing the historical function of the right to counsel as resulting from the dual concern that an accused, as a layman, should not be unfairly disadvantaged either from his inability to cope with the intricacies of the law or from the advocacy of a trained professional prosecutor appearing for the state, the Court stated:

> "This extension of the right to counsel to events before trial has resulted from changing patterns of criminal procedure and investigation that have tended to generate pre-trial events that might appropriately be considered to be parts of the trial itself." 413 U.S. 310.

The Court concluded that, therefore, in a given instance, examination must be made of the particular event at issue in order to determine whether the accused required aid in coping with legal problems involved or assistance in meeting his adversary.[6] It found such need to exist in trial-like confrontations.

The three dissenting judges, led by Mr. Justice Brennan, recognizing that the right also encompasses such things as preparation time, as discussed *supra,* would apply a more prognostic evaluation to determine whether assistance of counsel is necessary to protect the fairness of the trial itself.

We are required to conclude that the failure to appoint

---

6. The recent decision of the Indiana Supreme Court in *State ex rel. Keller* v. *Crim. Ct.* (1974), 262 Ind. 420, 317 N.E.2d 433, expanding pre-trial discovery in criminal cases may, thus, make it imperative that the right to counsel be affirmatively secured at the earliest feasible time after the commencement of formal proceedings.

counsel prior to March 1 does not represent a violation of the constitutional right to counsel. While the distinction we make may appear subtle, it is nevertheless necessary in dealing with the constitutional aspects of the right.[7] Although arguably counsel would advise an accused of his right to petition for speedy trial under CR. 4(B)(1), that is not a fair trial issue. It is a speedy trial issue and has already been answered.[8]

## III. DUE PROCESS

The concept of due process is difficult to precisely define. Indeed its pervasive character has led the court to decline an attempt at fixing its perimeters. See, e.g. *Bute* v. *Illinois* (1948), 333 U.S. 640; *Parks* v. *State* (1902), 159 Ind. 211, 64 N.E. 862. Most often it is instead referred to as the very essence of a scheme of ordered justice; the basic value of a sense of justice and fair play. *In re Gault* (1967), 387 U.S. 1, *Clemons* v. *State* (1974), 162 Ind. App. 50, 317 N.E.2d 859.

At this point it is well to disclose yet another circumstance in the proceedings involving Collins. On June 14, after denying the motion for discharge, the court inquired of Collins whether he desired trial by court or by jury. He first responded that he wished a court trial and then changed his mind and said he wished trial by jury. After further discussion in which Collins expressed displeasure with his appointed counsel, the court stated:

> "If you want to go to trial today, you're going to have to before the Court because there are no 12 people here and even if there were at that point, once again, that's a determination only you can make. If that's what you want to do, that is what we will do. This Court isn't going to railroad you or any defendant."

7. Perhaps it would be appropriate to implement an express standard requiring our courts, as soon as feasible in the course of judicial proceedings, to determine that an accused understands his right to counsel. If so, the procedure should be created by rule or statute as implementive of the right to counsel for it fails to reach constitutional dimension. See, *Ash, supra.*

8. Apart from the events here present, the speedy trial argument lacks merit. The other provisions of CR. 4 serve as a valid limitation, within the constitutional guaranty, to correct any failure of the accused to affirmatively seek his right.

Defendant then reaffirmed in response to four separate questions that he decided to waive jury trial.

We will not agonize over whether this exchange did or did not constitute a valid waiver, for its real impact on the proceedings lies elsewhere.[9]

From our examination of the entire record, including the matters heretofore discussed, we hold instead that the total context of circumstances present, by the aggravating ■ effect of each upon the other, demonstrate a clearly visible departure from the essential procedural elements of justice and fair play so substantial as to constitute a denial of due process to this defendant.

The judgment is therefore reversed with instructions that defendant be discharged.

Staton, P.J. and Hoffman, J., concur.

---

9. In fact Collins then offered to plead guilty, an offer properly rejected by the court. It was accompanied by Collins' declaration: ". . . [A]s far as passing the checks, I did not pass them. I did not make them. I've been here a year and I just want to get out. I have been here a year! We had a baby a couple of weeks before I was arrested and I haven't had a chance to see him. I haven't been working, I have lost my job."