John A. SULLIVAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 85A02–0505–CR–400.

Court of Appeals of Indiana.

Nov. 10, 2005.

Gary A. Cook, Peru, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

John A. Sullivan appeals the sentence imposed following his plea of guilty to one count of child molesting, a class A felony. We affirm.

### Issue

The restated issue we address is whether Sullivan was sentenced in violation of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

## Facts and Procedural History

On August 6, 1998, the State filed an information alleging Sullivan had committed twenty-three counts of child molesting on two of his children, C.S. and A.S. The trial court found probable cause to proceed on six of these charges; one of the counts was for class A felony child molesting and the remaining five were for class C felony child molesting. On November 30, 1998, Sullivan pled guilty to the class A felony charge, involving C.S., in exchange for dismissal of the remaining charges. Sentencing was left to the trial court's discretion. At the plea hearing, the State introduced the probable cause affidavit, without objection. The affidavit related numerous acts of molestation against C.S. and A.S., as well as a third child of his, J.S.

At the sentencing hearing held on February 9, 1999, Sullivan stated that there was nothing inaccurate in the presentence report. The report indicated that C.S. was Sullivan's eight-year-old daughter at the time of the offense. Also introduced at the sentencing hearing was a letter from a counselor who had spoken with Sullivan. Sullivan's attorney agreed that there was no dispute about the contents of the letter. The trial court imposed the maximum possible sentence of fifty years. It noted as aggravating circumstances that C.S. was eight years old; that she was Sullivan's daughter and there had been a position of trust; that he had admitted that other offenses were perpetrated against C.S., A.S., and J.S.;[1] that he had one prior conviction for trespassing; and that he was a danger to society and unlikely to be rehabilitated. It also assigned mitigating weight to Sullivan's admission of guilt.

On June 10, 1999, Sullivan filed a motion for modification of sentence, which the trial court denied. On August 23, 1999, he filed a petition for post-conviction relief. The petition languished for over five years with little or no activity until December 2004, when the petition was dismissed without prejudice on Sullivan's motion. On April 28, 2005, he filed a motion to initiate a belated appeal, which the trial court granted. We now consider that appeal, which solely challenges the sentence imposed by the trial court.

## Discussion and Decision

 Sullivan contends the trial court relied on aggravating circumstances neither admitted by him nor proven to a jury beyond a reasonable doubt in enhancing his sentence, in violation of his Sixth Amendment rights as set forth in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and applied in Indiana by *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), *cert. pending*. Under *Blakely* and Indiana's former sentencing scheme, trial courts could enhance a sentence above the presumptive based only on those facts that were established in one of several ways: (1) as a fact of prior conviction; (2) by a jury beyond a reasonable doubt; (3) when admitted by a defendant; and (4) in the course of a guilty plea where the defendant waived his or her Sixth Amendment rights and stipulated to certain facts or consented to judicial factfinding. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005).

The procedural posture of Sullivan's case is unusual. He was sentenced over five years before *Blakely* was decided. He did not directly appeal his sentence at that time; it does not appear he was informed that he could do so. Instead, Sullivan sought to challenge it first by way of a motion for sentence modification, then by filing a petition for post-conviction relief.

---

**1.** In the written sentencing order, this was phrased as "The Defendant is alleged by all his children to have perpetrated sexual acts on them." Appellant's App. at 15.

After no action was taken on the petition for over five years, it was dismissed in December 2004. Apparently, Sullivan moved for dismissal in response to *Collins v. State*, 817 N.E.2d 230, 233 (Ind.2004), which held "that the proper procedure for an individual who has pled guilty in an open plea to challenge the sentence imposed is to file a direct appeal or, if the time for filing a direct appeal has run, to file an appeal under [Indiana Post–Conviction Rule] 2," rather than filing a post-conviction relief petition. The trial court subsequently granted Sullivan permission to pursue this belated appeal challenging his sentence.

■ The State does not argue that Sullivan cannot invoke *Blakely* with respect to a sentencing hearing that was conducted in 1999. It was correct not to make such an argument. The Indiana Supreme Court's rule that precludes retroactive application of new criminal rules to collateral proceedings does not apply to direct appeals brought pursuant to Post–Conviction Rule 2. *Fosha v. State*, 747 N.E.2d 549, 552 (Ind.2001) (holding that defendant's claim based on *Richardson v. State*, 717 N.E.2d 32 (Ind.1999), would be considered on the merits, where defendant was convicted in 1993 and did not originally timely file a direct appeal but in 1999 was granted permission to file a belated appeal). "New rules for the conduct of criminal prosecutions are to be applied retroactively to cases pending on direct review or not yet final when the new rules are announced." *Powell v. State*, 574 N.E.2d 331, 333 (Ind.Ct.App.1991), *trans. denied*. Because Sullivan was given permission to file this belated direct appeal, he may rely on *Blakely* even though he was sentenced more than five years before it was decided because his case was "not yet final" when *Blakely* was decided. Additionally, *Smylie* holds that defendants sentenced before *Blakely* was handed down, but whose appeals were "on direct review" on that date, may raise a Sixth Amendment challenge to their sentences for the first time on appeal. *Smylie*, 823 N.E.2d at 690–91.

■ Turning to the merits of Sullivan's arguments, we observe that his prior conviction for one count of trespassing, although exempt from *Blakely*'s jury-finding requirement, clearly is insufficient by itself to sustain a maximum sentence for class A felony child molesting and, indeed, may not qualify as a significant aggravating circumstance at all. *See, e.g., Cotto v. State*, 829 N.E.2d 520, 526 (Ind.2005) (holding that criminal history consisting of five misdemeanor convictions was at best marginally significant in determining sentence for class A felony). There also appears to be no *Blakely*-permissible basis for the trial court's stated aggravator that Sullivan was a danger to society and unlikely to be rehabilitated. That leaves the focus on the following aggravators: C.S.'s age, her status as Sullivan's daughter, and the claim that he repeatedly molested her and his two other children, A.S. and J.S.

■ At the guilty plea hearing, Sullivan directly stated that C.S. was eight years old at the time of the offense to which he pled guilty. This was a clear admission to the fact of C.S.'s age and, thus, was properly utilized as an aggravating circumstance under *Blakely*. The trial court in its oral sentencing statement also recognized that although C.S.'s age, or being under fourteen years old, was an element of child molesting, the fact that she was significantly less than fourteen made the crime "more heinous . . . ." Tr. at 23. This justified the use of C.S.'s age as an aggravating circumstance under general Indiana sentencing law. *See Davis v. State*, 796 N.E.2d 798, 807–08 (Ind.Ct.App. 2003), *trans. denied*.

■ As for whether C.S. was Sullivan's daughter, he was not directly asked that question at the guilty plea or sentencing hearings. The presentence report, however, clearly listed C.S. as one of his children. The trial court asked Sullivan whether "there is anything in the report that you thought was inaccurate?" Tr. at 19. Sullivan said there was not. This court has held that if a defendant confirms the accuracy of a presentence report when given an opportunity to contest it, such confirmation amounts to an admission of information contained in the report for *Blakely* purposes. *See Carmona v. State,* 827 N.E.2d 588, 596–97 (Ind.Ct.App.2005); *but see Vela v. State,* 832 N.E.2d 610, 613–14 (Ind.Ct.App.2005) (holding defendant's statement that presentence report was correct did not constitute admission to the nature and circumstances of the crime reflected in the report). Thus, Sullivan admitted that C.S. was his daughter when he confirmed the accuracy of the presentence report. Having admitted that, it was readily apparent that he occupied a position of trust with respect to C.S. and the trial court's statement recognizing that also was valid under *Blakely. See Trusley,* 829 N.E.2d at 927.

■ Finally, we address the contention that Sullivan not only molested C.S., but had also molested J.S. and A.S., apparently all three repeatedly.[2] Sullivan was not directly questioned about this allegation during the guilty plea or sentencing hearings, nor was it directly relayed in the presentence report itself. However, we note the following. First, during the guilty plea hearing, the State sought to introduce the probable cause affidavit relating numerous instances of molestation of C.S., J.S., and A.S. into evidence; Sullivan did not object and never contested the accuracy of the affidavit. Second, at the sentencing hearing, the State sought to introduce a letter from a counselor who had spoken to Sullivan and which stated, "Mr. Sullivan acknowledges and accepts that he must be punished for his abuse of his children.... Sometime in the future, John's meeting with his children in counseling sessions will be extremely beneficial for their emotional and psychological recovery." Appellant's App. at 55. Defense counsel apparently provided this letter to the court. It also seems that there was a different letter from the same counselor that the prosecutor wanted to present to the trial court but could not be located. The prosecutor stated, "This contains an admission by uh Mr. Sullivan that uh, of all the children." Tr. at 22. The trial court then asked, "Is there any um, uh dispute about the contents of the letter," to which defense counsel replied "No." *Id.* Finally, Sullivan himself stated at the conclusion of the sentencing hearing:

> I know what I did's [sic] horrible and I just want to do what I can to fix what I broke without being locked away to the point where *they* ["my kids"] won't even know me when I get out or *they* will hate me for the rest of my life. Which *they* have every right to. I got a letter from my son not too long ago, my youngest son [J.S.] saying he forgives me and he hopes I get help.

*Id.* (emphases added). Sullivan had also said earlier, "I'm just sorry *this all* happened. I just wish I could turn it all back before *any of it* did happen. I wish I would've got help *before it got as far as it did." Id.* at 20 (emphases added).

When we consider these three factors together—the unobjected-to probable cause affidavit, the unobjected-to counselor's letter, and Sullivan's own statements regarding the harm he caused to "my

---

2. J.S. and A.S. also were clearly listed in the presentence report as Sullivan's children.

kids"—we conclude that there is a sufficient basis to find an admission by Sullivan that he had repeatedly molested C.S., A.S., and J.S. The State clearly contended that Sullivan had done so; he never attempted to refute that contention. In fact, by his statements regarding "all" he had done to "my kids," that "they have every right to" hate him, that J.S. had forgiven him, and acknowledging the accuracy of the counselor's relating that he had "abused" all of his children, Sullivan effectively confirmed the accuracy of the probable cause affidavit. Viewing the "plea colloquy" as a whole in this case, Sullivan admitted to having repeatedly molested all of his children. *See Trusley*, 829 N.E.2d at 926 (noting that courts may examine the entire "plea colloquy" of a defendant and defense counsel in determining whether a fact "has been adequately established during a plea hearing in order to pass Sixth Amendment muster.").

■■■ Thus, in this case Sullivan admitted to three clearly significant aggravating circumstances—C.S.'s age, that she was his daughter, and that he had also repeatedly molested her and A.S. and J.S. as well—but did not admit to being a danger to society or incapable of rehabilitation. In a case where a trial court has relied on some *Blakely*-permissible aggravators and others that are not *Blakely*-permissible, the "sentence may still be upheld if there are other valid aggravating factors from which we can discern that the trial court would have imposed the same sentence." *Edwards v. State*, 822 N.E.2d 1106, 1110 (Ind.Ct.App.2005). Here, we are confident that the trial court would have imposed an identical maximum sentence based solely on the facts that Sullivan had not only molested his eight-year-old daughter on one occasion, but that this occasion was part of a larger pattern of having regularly molested her as well as his two sons. *See, e.g., Newsome v. State*, 797 N.E.2d 293, 300 (Ind.Ct.App.2003) ("Repeated molestations occurring over a period of time can be an aggravating factor supporting the maximum enhancement."), *trans. denied.*

■■■ Sullivan makes several related challenges to his sentence that he bases upon *Blakely*, including that he did not receive adequate notice of the aggravating circumstances upon which the State planned to rely, that the Indiana Rules of Evidence should have governed his sentencing hearing, and that the Separation of Powers doctrine precluded the probation department—a judicial agency—from preparing the presentence report that played a role in determining Sullivan's sentence. We decline to address these arguments. Sullivan effectively admitted to three significant aggravating circumstances, and he raised no arguments whatsoever regarding his sentencing procedure before the trial court. He cannot do so now, just because *Blakely* has been decided. *Smylie* allows *Blakely* challenges to sentences, regardless of whether there was a Sixth Amendment objection to the trial court, in situations where defendants did not admit to non-criminal history aggravators. *See Smylie*, 823 N.E.2d at 690–91. We do not believe, however, that *Smylie* gave defendants carte blanche to raise peripheral *Blakely* issues, such as those Sullivan makes, where they did make admissions to aggravating circumstances that were sufficient to support an enhanced sentence. In other words, defendants can rely on *Blakely* retroactively, but they cannot retroactively retract admissions to sentencing aggravators just because *Blakely* might have altered the strategic consideration of whether to make such admissions. *See Trusley*, 829 N.E.2d at 926 n. 3.

■■ Finally, Sullivan contends that the nature of his sentencing was such that it

violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Course of Law provision of Article 1, Section 12 of the Indiana Constitution. He cites to *Collins v. State*, 163 Ind.App. 72, 80–81, 321 N.E.2d 868, 874 (1975), where this court held that although none of the issues the defendant raised by themselves amounted to reversible error, "the total context of circumstances present, by the aggravating effect of each upon the other, demonstrate a clearly visible departure from the essential procedural elements of justice and fair play so substantial as to constitute a denial of due process to this defendant." We see no such denial of "the essential procedural elements of justice and fair play so substantial as to constitute a denial of due process" to Sullivan. He freely admitted to three aggravating circumstances and was sentenced according to procedure that was well-established and broadly considered acceptable more than five years before *Blakely* drastically altered the sentencing landscape. We decline to find a violation of Sullivan's due process or due course of law rights.[3] In sum, Sullivan's admissions are adequate under *Blakely* to justify the maximum sentence that he received in this case. We affirm.

Affirmed.

NAJAM, J., concurs.

BARNES, J., concurs in result, with opinion.

BARNES, Judge, concurring in result.

I concur with the result reached by the majority that any *Blakely* error in this case was harmless. I disagree with the analysis the majority utilizes with regard to whether it is "confident" the error was harmless, citing to *Edwards v. State*, 822 N.E.2d 1106, 1110 (Ind.Ct.App.2005). I have elsewhere stated my rationale for believing that we must review *Blakely* error according to the standard of whether such error was harmless beyond a reasonable doubt. *See Davis v. State*, 835 N.E.2d 1087 (Ind.Ct.App., 2005) (Barnes, J., concurring in result). I adhere to that belief in this case. Nonetheless, I conclude that any error in this case in relying on *Blakely*-impermissible aggravators was harmless beyond a reasonable doubt based on Sullivan's admission of having regularly molested his own children. Therefore, I concur in result.

---

3. Sullivan also invokes Article 1, Section 19 of the Indiana Constitution, and its guarantee that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Even if we were to assume that this provision applies to sentencing proceedings, as Sullivan wishes, we discern no reason for an analysis or outcome in this case different from what we have already arrived at in this case under *Blakely*.