# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy L. Gransbury, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | May 26, 2017 <br><br> Court of Appeals Case No. 41A05-1606-CR-1422 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Lance Hamner, Judge <br><br> Trial Court Cause No. 41D03-1402-FA-2 |

**May, Judge.**

[1] Timothy L. Gransbury appeals his convictions of Class A felony child molesting[1] and Class D felony dissemination of matter harmful to minors[2] for acts he committed against his five-year-old daughter. He argues the evidence was insufficient to sustain his convictions and his fifty-year sentence for child molesting is inappropriate. We affirm.

## Facts and Procedural History

[2] Gransbury married Kellie in 2008. Kellie and Gransbury have two daughters: M.G., born September 21, 2008, and S.G., born September 25, 2010 (collectively, "Children"). Before marrying Kellie, Gransbury served in the Navy for twenty years, was married twice, and has two adult sons from his second marriage. During his marriage to Kellie, Gransbury worked as a semi-truck-driver, which required him to be gone many days of the week. Kellie did not work and stayed home with the Children.

[3] Gransbury and Kellie had an acrimonious relationship. Early in the marriage, Gransbury told Kellie he was "sexting" fourteen-year old girls. (Tr. Vol. 4 at 81.) After this incident, Kellie moved out with the Children, and Kellie and Gransbury were legally separated for a period in 2009. Eventually, the two

---

[1] Ind. Code § 35-42-4-3(a)(1) (2007).

[2] Ind. Code § 35-49-3-3(a) (2006).

attempted to reconcile, and Kellie and the Children moved back in with Gransbury.

[4] Gransbury and Kellie failed in their attempt to reconcile. In early December 2012, Kellie and the Children moved out of the marital home and moved in with Kellie's parents. On December 5, 2012, Gransbury filed a petition for divorce from Kellie.[3] Gransbury remained in the marital home. In mid-December 2012, Kellie called the Department of Child Services ("DCS") to report she had found "daddy/daughter pornography" on Gransbury's phone, (*id*. at 88-89), and Gransbury had been physically abusive toward M.G. on one occasion. Kellie testified she reported the incidents to DCS in hopes the court would require Gransbury's parenting time be supervised. DCS investigated the matter but did not open a Child in Need of Services ("CHINS") case based on this allegation.

[5] On December 17, 2012, the court held an initial hearing on Gransbury's divorce petition. Kellie requested Gransbury's parenting time be supervised, citing Gransbury's alleged sexting and incident of physical abuse of M.G. The court denied Kellie's request. At the time of the hearing, Gransbury's job as a semi-truck driver required him to be out of town most days of the week. The court granted Gransbury and Kellie temporary joint legal custody, but because of Gransbury's schedule, the court granted Kellie primary physical custody of

---

[3]The court finalized Gransbury and Kellie's divorce on April 7, 2016.

the Children and provided Gransbury weekly parenting time from Saturday mornings at 10 a.m. to Sunday evenings at 6 p.m.

[6] After Gransbury started exercising parenting time in 2013, Kellie began noticing changes in M.G.'s behavior. Specifically, Kellie observed M.G. was "tired all the time," (*id.* at 39), had trouble waking up in the mornings, expressed daily "complaints of stomach pain," (*id.*), and had "frequent potty accidents." (*Id.*) Kellie further observed M.G. biting her fingernails "constantly," (*id.*), "pick[ing] at her lip and chin until they were raw and sore," (*id.*), "refusing to drink white milk," (*id.*), and having nightmares.

[7] Due to health issues, Gransbury stopped working as a semi-truck driver in the summer of 2013, which allowed him to be home more. On August 20, 2013, Gransbury filed a petition for the court to increase his parenting time. The court scheduled a mediation and hearing on Gransbury's petition, but the hearing was continued until February 2014. The court ultimately never modified Gransbury's parenting time.

[8] Between October 1, 2013, and December 25, 2013, Gransbury molested M.G. on numerous occasions. Gransbury performed oral sex on M.G. and, at Gransbury's request, M.G. performed oral sex on Gransbury on at least three different occasions. Additionally, Gransbury showed M.G. pornographic videos, including videos of Kellie and Gransbury engaging in oral sex and sexual intercourse.

On the evening of January 28, 2014, Kellie put the Children to bed before she left for a night shift at the nursing home where she worked. At the time, Kellie and the Children were still living with Kellie's parents. As Kellie was tucking the Children into bed, M.G. told Kellie she had a "secret" with her father. (App. Vol. III at 14.) When Kellie asked about the secret, M.G. revealed Gransbury made M.G. perform oral sex on him. Kellie told her parents what M.G. told her, and then left for her shift and worked from 11 p.m. to 7 a.m. the next morning. Around 10 a.m. on January 29, 2014, Kellie called DCS and the New Whiteland Police Department ("NWPD").

On January 30, 2014, DCS Family Case Manager ("FCM") Michelle Fritz conducted a forensic interview with M.G. NWPD Detective David Glaze was also present for the interview. Detective Glaze was not in the interview room, but listened from another room. During the interview, FCM Fritz asked M.G. to identify different parts of anatomical diagrams of a girl and boy. M.G. indicated she understood there were certain body parts that no one should touch, but Gransbury would touch M.G. on those body parts and would "lick her bottom."[4] (Id. at 13.) M.G. also stated Gransbury would have her "lick his bottom," which he referred to as "George." (Id.) M.G. pointed to the penis on the male diagram when she was showing FCM Fritz "George." M.G. indicated to FCM Fritz she had to do this at least three times, and one of the

---

[4] At the interview, M.G. pointed to the vaginal area on the female diagram, indicating she referred to the vagina as a "bottom." (App. Vol. III at 13.)

times Gransbury asked her to "drink the milk" that came out of George. (*Id.* at 14.) M.G. told FCM Fritz that Gransbury used a black computer in his bedroom to show her videos of "daddy and mommy" performing sexual acts. (*Id.*)

[11] The NWPD obtained and executed a search warrant in Gransbury's home that same day. Detective Glaze testified when he arrived to serve the warrant, Gransbury opened the door and told him "he'd expected [the police] to come." (Tr. Vol. 4 at 149.) The NWPD seized two laptop computers: a Toshiba and a Dell. Glaze gave the laptops to Sergeant Jennifer Barnes of the Indiana State Police Cyber Crime Unit to conduct a forensic review of the hard drives. Sergeant Barnes found no pornography videos, but found numerous web sites offering porn videos in the internet activity of the Toshiba. In addition, Sergeant Barnes found a "window washing" program on the Toshiba, which allows a user to completely erase all files from the hard drive. (Tr. Vol. 5 at 13-14.) Kellie knew Gransbury had videos of Kellie and Gransbury engaging in oral sex and sexual intercourse because he had shown her the videos.

[12] On February 3, 2014, the State charged Gransbury with Class A felony child molesting, and Class D felony dissemination of matter harmful to minors for the acts he committed against M.G. The court issued a no-contact order requiring Gransbury to have no contact with the Children.

[13] On April 19-21, 2016, the court held a jury trial. Gransbury maintained his innocence. The jury heard testimony from M.G., Kellie, FCM Fritz, Detective

Glaze, and Sergeant Barnes. After hearing the evidence, the jury found Gransbury guilty on both charges.

[14] At sentencing, the court found as mitigators Gransbury's lack of criminal history and Gransbury's "difficult childhood." (*Id.* at 114-15.) The court further found Gransbury's former military service in the Navy as a mitigator. The court found as aggravators the fact that M.G. was five years old, that Gransbury was in a position of trust, and that Gransbury molested not just any five-year-old, but his own daughter. (*Id.* at 115.) The court concluded the "aggravators far outweigh[ed] the mitigators[,]" (*id.*), and "an aggravated sentence [was] appropriate." (*Id.*) The court sentenced Gransbury to fifty years in the Department of Correction with five years suspended to probation for Class A felony child molesting and three years, with six months suspended to probation, for Class D felony dissemination of matter harmful to a minor. The court ordered the sentences be served concurrently, with 358 days of credit for time already served.

# Discussion and Decision

## I. Sufficiency of Evidence

[15] When reviewing sufficiency of the evidence to support a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Binkley v. State*, 654 N.E.2d 736, 737 (Ind. 1995), *reh'g denied*. The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder. *Id.* We do not assess the

credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id*. at 147.

[16] To prove Gransbury committed Class A felony child molesting, the State had to show Gransbury, a person at least twenty-one years old, knowingly performed deviate sexual conduct with M.G., a child under the age of fourteen. Ind. Code § 35-42-4-3(a)(1) (2007). Deviate sexual conduct means an act involving (1) a sex organ of one person and the mouth or anus of another person, or (2) the penetration of the sex organ or anus of a person by an object. Ind. Code § 35-31.5-2-94 (2012). To prove Gransbury committed Class D felony dissemination of matter harmful to minors, the State had to prove Gransbury knowingly or intentionally disseminated matter to M.G., a minor, that was harmful to her. Ind. Code § 35-49-3-3(a)(1) (2006).

[17] In challenging the sufficiency of the evidence as to both crimes, Gransbury argues "[t]he only evidence introduced by the State was the testimony of Kellie, [M.G.], and [FCM Fritz] to support the allegations made by [M.G.]," (Appellant's Br. at 22), and there is no physical evidence of child molesting or dissemination of matter harmful to minors. Gransbury states the NWPD "failed to collect any of the child's clothing" or other garments when officers

executed the search warrant, (*id.* at 16), and the forensic exam of Gransbury's laptop returned no evidence of homemade pornographic videos.

[18] M.G.'s testimony alone is sufficient to sustain Gransbury's convictions. *See Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001) (a molested child's uncorroborated testimony is sufficient to sustain a conviction), *reh'g denied*. M.G. testified Gransbury touched her on her "bottom," (Tr. Vol. 4 at 234), and when asked how, M.G. testified "[h]e licked it." (*Id.*) When asked "what [she] would do to George," M.G. testified, "Lick it because he told me to." (*Id.*) When asked why she called it "George," M.G. responded "[b]ecause my dad told me to call him, it George." (*Id.* at 232.) M.G. further testified "sometimes he would have me watch videos of other people doing it that I didn't even know[,]" (*id.* at 236), and "once he had me watch one of my mommy and dad doing it." (*Id.*)

[19] M.G. told the same story to Kellie on the night of January 28, 2014, to Fritz during the forensic interview, and at trial. Moreover, the jury was free to believe or disbelieve M.G.'s testimony. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) (a trier of fact is not required to believe a witness's testimony even when it is uncontradicted). In light of M.G.'s testimony, the evidence is sufficient to sustain both of Gransbury's convictions, and Gransbury's argument regarding the lack of any physical evidence is not a basis for reversal. *See Carter*, 754 N.E.2d at 880 (child molestation often occurs without witnesses or physical evidence, and the fact that the only evidence is the child victim's statement does not require reversal of a molestation conviction).

[20]    To the extent Gransbury maintains the theory, as he did at trial, that Kellie convinced M.G. to lie about the molestation because she was "desperate" to stop Gransbury from receiving parenting time in their divorce proceedings, (Appellant's Br. at 22), this argument is a request for us to reweigh evidence and judge the credibility of the witnesses, which we cannot do. *See Drane,* 867 N.E.2d at 146 (we do not assess witness credibility or reweigh evidence in determining whether the evidence is sufficient). The State presented sufficient evidence to support the two convictions.

## II. Inappropriateness of Sentence

[21]    Gransbury also argues the fifty-year sentence he received for his Class A felony child molesting conviction is inappropriate. Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). Our review is deferential to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006). Revision of a sentence under Rule 7(B) requires the appellant demonstrate his sentence is "inappropriate in light of *both* the nature of the offenses and his character." *Williams,* 891 N.E.2d at 633 (emphasis in original).

[22] Here, Gransbury failed to present any argument regarding the nature of his offense and, thus, has waived our review of the inappropriateness of his sentence. *See Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (holding issue waived where appellant failed to present any authority or analysis on the nature of his offense). Waiver notwithstanding, Gransbury has failed to persuade us his fifty-year sentence is inappropriate.

[23] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (2007). The statutory range for a Class A felony is twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4 (2012). One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the "typical" offense accounted for by the legislature when it set the advisory sentence. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*. Here, Gransbury molested M.G. on multiple instances over a protracted length of time, and told her to keep it a secret. As a result of the repeated molestations, M.G. exhibited behavioral symptoms such as wetting the bed, nightmares, and lethargy.

[24] Gransbury argues, in imposing the maximum fifty-year sentence, the court failed to give proper weight to the fact Gransbury was fifty-six years old at the time of sentencing, had no criminal record at the time of the offense, had an honorable career of twenty years in the Navy, and had been a victim of physical

and sexual abuse as a child.  He also argues the court put improper weight on M.G.'s age.[5]

We disagree.  "[T]he trial court determines the weight assigned to mitigating circumstances and a lack of criminal history does not automatically outweigh any valid aggravating circumstances."  *Mastin v. State*, 966 N.E.2d 197, 203 (Ind. Ct. App. 2012).  As M.G.'s father, Gransbury was in a position of trust.  He violated this position of trust each time he perpetrated the crimes.  As the trial court noted, Gransbury molested a child who was five years old, and "not just somebody [he] was in a position over, but [his] own daughter."  (Tr. Vol. 5 at 115.)  The court noted, by molesting his own daughter, Gransbury committed acts against the "person who most in the world [he] should have been willing to stand in front of and protect [] with [his] very life."  (*Id.*)  Moreover, the court noted Gransbury molested M.G. not once, but "again, and again, and again."  (*Id.* at 116.)  In addition, the court stated Gransbury's use of pornographic videos of M.G.'s own mother to persuade M.G. to allow

[5] To this point, Gransbury argues "child molesting is a Class A felony due to the moral revulsion of the crime," and therefore the court erred in considering M.G.'s age as an additional aggravator.  (Appellant's Br. at 29.)  Gransbury cites *Serino v. State,* 798 N.E.2d 852 (Ind. 2003), for the proposition that "circumstances must be balanced in view of the fact that the legislature has already built into its sentencing range the consequences to victims, moral revulsion, and other factors inherent in the crime."  (Appellant's Br. at 29.)  First, we note this quote in fact comes from *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008), not *Serino.*  Next, in deciding whether to impose more than the advisory sentence, the court has discretion to consider whether the victim was less than twelve years old as an aggravating circumstance, and here, the court did not abuse that discretion.  *See* Ind. Code § 35-38-1-7.1(3); *see also Reyes v. State,* 909 N.E.2d 1124, 1128 (Ind. Ct. App. 2009) (trial court's consideration of child victim's age as aggravating factor in sentencing for child molesting was not an abuse of discretion).

Gransbury to molest her made his crimes "even more despicable," and found that as a substantial aggravator. (*Id.*)

We agree with the trial court. Even if we presume from Gransbury's Navy service that he had good character in the past, it cannot prompt us to look past the poor character reflected by the egregiousness of Gransbury molesting his own child. As the trial court stated, Gransbury "performed good military service to this country," (*id.* at 115), however, "as a member of the United States Armed Forces, it [is] [his] responsibility to defend the citizens of this country, not to molest its children." (*Id.*) Given Gransbury's violation of his position of trust, M.G.'s age, and the multiple acts Gransbury committed against M.G., his own daughter, we find nothing inappropriate about Gransbury's fifty-year sentence based on his character or his offense. *See Sullivan v. State*, 836 N.E.2d 1031, 1037 (Ind. Ct. App. 2005) (imposition of maximum fifty-year sentence was supported by aggravating factors of child's age, status as the defendant's daughter, and repeated molestations).

# Conclusion

M.G.'s testimony was sufficient evidence to sustain Gransbury's convictions. Furthermore, in light of Gransbury's character and the nature of the offenses, his sentence is not inappropriate. Accordingly, we affirm.

Affirmed.

Brown, J., and Pyle, J., concur.