# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 20 2019, 9:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua B. Stam,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 20, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2873<br><br>Appeal from the Miami Circuit Court<br><br>The Honorable Timothy P. Spahr, Judge<br><br>Trial Court Cause No.<br>52C01-1709-F1-28 |

**Altice, Judge.**

# Case Summary

Joshua Stam appeals the sixteen-year sentence he received after pleading guilty to Level 3 felony aggravated battery, which stemmed from his attack on a correctional officer who was transporting Stam from a court hearing back to prison. He claims that his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts & Procedural History

In August 2017, Stam was serving a sentence at the Miami Correctional Facility. Following a court appearance on August 30, Decatur County Sheriff's Department Transport Officer David Weakley picked up Stam from the Sheriff's Department to return him to the Miami Correctional Facility. Officer Weakley shackled and handcuffed Stam and placed him in the front seat of his patrol car. While Officer Weakley was driving, Stam freed his left hand from the handcuff and struck Officer Weakley in the face. Stam also freed himself from his seatbelt and climbed over the center console in the car and on top of Officer Weakley. Stam unsuccessfully attempted to remove Officer Weakley's gun from its holster. He then used a strip of cloth, which was one inch in width and sixty-six inches in length and appeared to be bedding material, to strangle Officer Weakley until he lost consciousness. When Officer Weakley regained consciousness, Stam was trying to put the car in gear. Two bystanders saw what was happening and removed Stam from the car.

[4] On September 14, 2017, the State charged Stam with Level 1 felony attempted murder, Level 3 felony aggravated battery, Level 4 felony escape, and Level 5 felony battery resulting in bodily injury to a public safety official and also alleged that Stam was a habitual offender. The parties entered into a plea agreement, and on November 1, 2018, Stam pled guilty to Level 3 felony aggravated battery, and the State dismissed the remaining charges and the habitual offender allegation. Sentencing was left to the discretion of the court.

[5] At the guilty plea hearing, Stam's counsel questioned Stam and provided the following factual basis:

> Q. Back on August 30, 2017 were you in Miami County, in the State of Indiana?
>
> A. Yes sir.
>
> Q. On that day did you knowingly inflict injury on David Weekly [sic] that created a substantial risk of death?
>
> A. Yes sir.
>
> Q. And that is why you feel that you're charged with Aggravated Battery, am I correct?
>
> A. Yes sir.
>
> Q. You think they could prove that if it went to a jury?
>
> A. Yes sir.

Q. No further questions.

STATE: No questions.

COURT: Okay I have no additional questions for this witness regarding the establishment of a factual basis either so evidence is concluded.

*Transcript* at 79. The trial court accepted the plea agreement and, with the parties' agreement, proceeded to sentencing.

The information before the court[1] indicated that Stam started using drugs when he was ten years old and has used marijuana, cocaine, methamphetamine, and heroin, and has abused prescription drugs. He was adjudicated delinquent for theft, runaway, resisting law enforcement, and forgery. As an adult, he was convicted of Class D felony auto theft, Class D felony theft, Class B felony burglary, Level 4 felony burglary, and Level 6 felony resisting law enforcement. He has never successfully completed probation or community corrections and

---

[1] Stam suggests that the factual basis presented at the hearing was minimal, and to the extent that Stam is arguing that the trial court should not also have considered the facts outlined in the probable cause affidavit (PCA), we find no error with the trial court's reliance on that information when sentencing Stam. The presentence investigation report (PSI) filed with the court included the PCA as well as the arrest warrant, and Stam had no corrections or deletions to the PSI's contents, other than minor technical corrections. Accordingly, the trial court could consider the PCA. *See Sullivan v. State*, 836 N.E.2d 1031, 1036-37 (Ind. Ct. App. 2005) (where defendant indicated there were no corrections to be made to presentence report and did not object to introduction of PCA at sentencing hearing, defendant effectively admitted to contents of report and affidavit). Furthermore, our Supreme Court has recognized that, unless the plea agreement provides otherwise, "it is not necessary for a trial court to turn a blind eye to the facts of the incident that brought the defendant before [it]." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013).

has violated probation at least three times. The parties stipulated that Stam's criminal history was an aggravator.

[7] Stam, who was twenty-eight years old, testified at the hearing about his childhood and drug abuse. He explained that, after being removed as a baby from his mother's care, he was adopted and that his adoptive father was verbally and physically abusive. After breaking his leg at age thirteen, Stam was prescribed hydrocodone to manage the pain, which ultimately led to addiction and to crime. He first started getting into trouble at age thirteen or fourteen, and he dropped out of high school in ninth grade. After a commitment to the Boys School, he got a job and attempted to join the military but was rejected due to his history of drug use. Stam testified that, not long after, he got arrested and was sentenced to prison for nineteen years with seven years suspended. He was released early on community corrections, but violated the terms of his placement, and the court revoked his suspended sentence, returning him to prison. With regard to the incident with Officer Weakley, Stam conceded that he "screwed up" badly and that it was "every bit of [his] fault." *Id*. at 96.

[8] Stam's counsel argued that Stam's troubled childhood, including conflict with his adoptive father, and drug addiction starting at a young age, were mitigating circumstances. Stam asked the court to impose twelve years with six years executed. The State maintained that there were no mitigators and sought the maximum sixteen-year sentence. Officer Weakley did not appear at the hearing, but in a statement of allocution Stam expressed, "I really wish Mr.

Weekly [sic] was here so I'd be able to tell him that I'm sorry . . . for the pain and inconvenience that I cause [sic] him and his family." *Id*. at 104.

[9] The trial court expressly stated that it considered Stam's proposed mitigators – his "very difficult upbringing and [] past history with drug [] abuse" – but observed that "a lot of people who go through the criminal justice system . . . have had difficult upbringings" but "[t]here are plenty of people who've had challenging upbringings who haven't resorted to attacking [] an officer[.]" *Id*. at 107. The court also observed that "drug abuse is often a driver" but that, in this case, the court "heard nothing today or in the [PSI] to indicate somehow drugs were a driver in this particular offense." *Id*. at 106-07. Rather, the court found, "It looks like to me [that]… you just wanted to get out and you were going to do whatever it took to get out of custody." *Id*. at 107. The trial court identified Stam's "extensive" criminal history as an aggravator and sentenced him to an executed sixteen-year term in the Indiana Department of Correction.[2] *Id*. at 105. Stam now appeals.

## Discussion & Decision

[10] Stam claims that his sentence is inappropriate. Pursuant to Ind. Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the

---

[2] Sixteen years is the maximum sentence that can be imposed for a Level 3 felony. Ind. Code § 35-50-2-5(b).

offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "'[W]e must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Rogers v. State*, 878 N.E.2d 269, 275 (Ind. Ct. App. 2007) (quoting *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)), *trans. denied*. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[11] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013). The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *Miller v. State*, 105 N.E.3d 194, 196 (Ind. Ct. App. 2018). Stam bears the burden of persuading us that his sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*.

[12] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Stam urges that his conduct "could just as easily have been described as a battery resulting in bodily injury to a public safety officer as a Level 5 felony." *Appellant's Brief* at 7. Therefore, he asserts, the nature of his offense was "closer to the Level 5 end than the worst of the Level 3 end of the spectrum," i.e., his crime "was not the 'worst of the worst' of aggravated batteries." *Id.* at 9. We are unpersuaded, however, that the nature of his offense warrants revision of his sentence.

[13] Here, while being transported back to the correctional facility, Stam freed himself from one handcuff and attacked Officer Weakley as he was driving. Stam hit the officer in the face and crawled over the console on top of him. Stam tried to take Officer Weakley's gun, and he strangled Officer Weakley with a strip of bedding cloth until he lost consciousness. Fortunately, two men saw what was occurring and helped Officer Weakley. As a result of the incident, Officer Weakley went to the hospital. He had an abrasion on his neck and petechial hemorrhages on the back of his throat, a bite mark on his palm, and an injury to his gums. We see no "compelling evidence[,]" such as "restraint, regard, and lack of brutality[,]" that portrays the nature of the offense "in a positive light[.]" *Stephenson*, 29 N.E.3d at 122. Like the trial court, we are troubled by the "degree of violence" and "viciousness" of the attack. *Transcript*

at 107-08. Stam's sentence was not inappropriate in light of the nature of the offense.

[14] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. When considering the character of the offender, "'one relevant fact is the defendant's criminal history,' and '[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense.'" *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*. The trial court may consider not only the defendant's adult criminal history but also his juvenile delinquency record in determining whether his criminal history is significant. *Id.*

[15] Stam's juvenile history began around age fourteen and his encounters with the law continued until the present case, when he committed the present offense at age twenty six. Stam accrued five felonies as an adult and a number of delinquency adjudications as a juvenile. He never successfully completed probation or community corrections. As the trial court observed, "prior attempts at rehabilitation through the juvenile justice system have not worked" and "[p]rior attempts through adult justice system have not worked." *Transcript* at 108. The trial court found that Stam's criminal history has "been over an extended period of time" and included "prior incarceration, prior boy's school, even before the, the adult incarcerations" and none of that "led to a change" in behavior. *Id.* at 106. We agree, and Stam has failed to show that his character warrants revision of his sentence.

Stam also argues that he "deserves some credit" for accepting responsibility and pleading guilty to Level 3 felony that, he claims, could have been a Level 5 felony. *Appellant's Brief* at 9. We find that Stam indeed received substantial credit for his decision to plead guilty, as the State agreed to dismiss three other felonies, including attempted murder, and the habitual offender allegation.

We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker*, 994 N.E.2d at 315. Stam has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.